NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DONALD W. CASSIDY,**
*Petitioner,*

**v.**

**DEPARTMENT OF JUSTICE,**
*Respondent.*

---

2014-3024

---

Petition for review of the Merit Systems Protection Board in No. DA-1221-11-0365-B-1.

---

Decided: July 14, 2014

---

DONALD W. CASSIDY, of The Woodlands, Texas, pro se.

BARBARA E. THOMAS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and FRANKLIN W. WHITE, JR., Assistant Director.

---

Before LOURIE, O'MALLEY, and CHEN, *Circuit Judges.*

PER CURIAM

Donald W. Cassidy appeals the Merit Systems Protection Board's (MSPB) denial of his request for corrective action under the Whistleblower Protection Act (WPA). Because we find that substantial evidence supports the MSPB's determination that the Department of Justice (DOJ) demonstrated by clear and convincing evidence Mr. Cassidy would not have been selected to serve as an immigration judge even if he had made no disclosures protected under the WPA, we affirm.

## I. BACKGROUND

### A. San Antonio application

At all times relevant to this appeal, Mr. Cassidy served as deputy chief counsel for the Immigration and Customs Enforcement Service (ICE), part of the Department of Homeland Security. In that capacity, Mr. Cassidy assisted in developing and coordinating ICE's litigation positions before the Immigration Court in Houston, Texas, an administrative tribunal operating within the Executive Office for Immigration Review (EOIR), which is part of DOJ.

In May and December 2009, respectively, Mr. Cassidy submitted applications in response to EOIR vacancy announcements for immigration judge positions in San Antonio, Texas and in Houston, Texas. Each vacancy announcement required applicants to describe their qualifications, including how they "demonstrate[d] the appropriate temperament to serve as a judge." Supplemental Appendix ("S.A.") 36, 42.

Judge Larry Dean, an Assistant Chief Immigration Judge based in San Antonio, was responsible for checking the references of some of the candidates for the San Antonio position, including the references listed in Mr. Cassidy's application. As part of this process, sometimes called "vouchering," he interviewed the individuals listed

as references by Mr. Cassidy as well as several individuals who were not listed as references but knew Mr. Cassidy on a professional basis. He summarized these interviews in several "vouchering sheets."

Among those interviewed by Judge Dean included Dina Sherman, the administrator for the immigration court in Houston. Ms. Sherman described Mr. Cassidy as "informative and well-informed," though his emails were sometimes "defensive." S.A. 64. She stated that he was "passionate about certain issues," and, "[i]f a legal issue arises, . . . inflexible." *Id.* He was, in her opinion, "a person who either likes you or does not." *Id.*

Phillip Law, a Houston-based immigration judge, considered Mr. Cassidy to be "very competent," but expressed uncertainty about his impartiality. Judge Law commented: "would [Mr. Cassidy] be impartial? I don't know. He is very enforcement[-]oriented. He would probably be impartial." S.A. 64. Judge Law also noted that Mr. Cassidy was sometimes "not tactful" and that "some trial attorneys indicate that he can 'get rough at times.'" *Id.*

Judge Dean also interviewed Howard Rose, another Houston-based immigration judge. Judge Rose stated that he had known Mr. Cassidy for 15-20 years, and that Mr. Cassidy "is not a good people person, nor does he have a good temperament." S.A. 64. Judge Rose said that Mr. Cassidy "[wa]s not easy to get along with," and that "'lots of good people' ha[d] left the [Chief Counsel's] office because of [him]." *Id.* Judge Rose felt Mr. Cassidy "'lords' over people" and that "he would be a 'screamer' in court." *Id.*

Judge Dean prepared "vouchering sheets" incorporating these responses for the chief immigration judge, Brian O'Leary, and the acting EOIR director, Thomas Snow. Judge O'Leary and Mr. Snow both prepared a ranking of the top candidates for the San Antonio immigration judge position. They each initially ranked Mr. Cassidy as the

top candidate. S.A. 65–66. In January 2010, however, Mr. Snow expressed concern "about leaving Cassidy as my number one ranked candidate," especially since there was another candidate, Anibal Martinez, who was "highly qualified" and had "received outstanding references." S.A. 66. Though Mr. Snow did not believe Mr. Cassidy should be "disqualif[ied]" from the application process, the "temperament[-]related comments he received from some of the people checked with" were "troub[ling]." *Id.* After conferring with Judge O'Leary, they determined that Mr. Cassidy should be ranked second, and Mr. Martinez, with strong credentials and no apparent temperament-related concerns, ranked first. They forwarded this ranked list of candidates to a panel of three DOJ officials who made the ultimate selection decision, choosing Mr. Martinez to fill the vacancy. Mr. Cassidy was notified in May 2010 that he had not been selected for the San Antonio immigration judge position.

## B. Houston application

In December 2009, Mr. Cassidy also submitted an application for an immigration judge position in Houston. Mr. Cassidy's application for the Houston position was evaluated by Judge O'Leary and Mr. Snow *after* they had finished reviewing his application for the San Antonio position. S.A. 179. For the Houston position, Judge O'Leary and Mr. Snow ranked Mr. Cassidy as the top candidate among the received applications. According to Mr. Snow, since candidates were "ranked vis[-]a[-]vis the other candidates that had applied for that city or that vacancy," despite any previous concerns about Mr. Cassidy's "temperament," Mr. Snow believed that Mr. Cassidy was "the best candidate for the Houston vacancy at the time I forwarded the [] recommendation [to the DOJ selection panel]." S.A. 180.

As with the previous ranking for the San Antonio position, Judge O'Leary and Mr. Snow's ranked list of

candidates was submitted to a three-person panel of DOJ officials. The DOJ panel—consisting of Mr. Snow himself and two deputy assistant attorney generals, Mike Allen and Ann Ravel—invited Mr. Cassidy for an interview in May 2010. Mr. Snow characterized Mr. Cassidy's performance in the interview as "OK, but not great. Mike [Allen] & Ann [Ravel] didn't think he was very strong. [Mr. Cassidy] didn't always answer the question asked . . . [and was t]oo facile in responses." S.A. 79.

As a result, the panel invited the second-ranked candidate for an interview. This candidate also failed to impress the panelists. The panel then invited the third-ranked candidate, Saul Greenstein, whom they determined to be "very poised, reflective, articulate, [with an] excellent low-key demeanor." S.A. 177. Mr. Greenstein was ultimately selected to fill the vacant immigration judge position in Houston. Mr. Cassidy was informed in June 2010 that he had not been selected for the position.

## C. Mr. Cassidy's complaint

According to Mr. Cassidy, he initially filed a complaint with the Equal Employment Opportunity Commission when he found out that Mr. Martinez was selected for the San Antonio immigration judge position.[1] After he was not selected for the Houston immigration judge position, Mr. Cassidy submitted a complaint to the Office of Special Counsel, alleging that his failure to be selected for the San Antonio and Houston immigration judge positions constituted retaliation against him for making disclosures protected by the WPA.

The crux of Mr. Cassidy's complaint was based on an e-mail exchange in October 2009 between his supervisor, Gary Goldman, and Judge Dean ("the October 2009 e-mail

---

[1]    Mr. Cassidy no longer alleges an Equal Employment Opportunity violation. Appellant's Br. 6.

chain"). Mr. Goldman, Mr. Cassidy's supervisor and ICE's chief counsel, sent an e-mail to Judge Dean stating that the immigration court in Polk County, Texas, took on average "greater than three weeks to schedule an alien for an initial master calendar appearance after receipt of the filing of the [notice to appear]." S.A. 50. This delay, according to Mr. Goldman's recollection, violated a settlement agreement that required DOJ to provide an initial hearing to detained immigrants within 48 hours of the government giving the court notice of the detention. Shortly thereafter, Mr. Cassidy, who had been copied on the e-mail, replied to all the message's recipients, stating "I have always found this to be an important issue . . . . Clearly, indeterminate detention was a concern of our Founding Fathers. . . . [T]he detainees probably have the same fears of indeterminate detention. I hope we can address this issue." *Id.*

Judge Rose's name did not appear anywhere in the October 2009 e-mail chain. Nevertheless, Mr. Cassidy alleged that this e-mail was a "complain[t]" about Judge Rose to Judge Dean. S.A. 86. Further, even though it was Mr. Goldman—and not Mr. Cassidy—who wrote to Judge Dean about the allegedly long wait times for detained immigrants, Mr. Cassidy's complaint implied that he—and not Mr. Goldman—had written the initial e-mail to Judge Dean in the October 2009 e-mail chain. *See id.*

The Office of Special Counsel closed its file on Mr. Cassidy's complaint in February 2011 after concluding that his WPA claim lacked merit. Mr. Cassidy then filed a WPA claim with the MSPB, contending that his complaints to Judge Dean about Judge Rose constituted protected disclosures, and that Judge Dean had punished him for making these disclosures by ensuring that Mr. Cassidy would not be selected for a position as an immigration judge. An administrative judge at the MSPB dismissed Mr. Cassidy's WPA claim for lack of jurisdiction.

On appeal, the MSPB vacated the administrative judge's dismissal for lack of jurisdiction. The MSPB concluded that if Mr. Cassidy had "complained to Judge Dean that Judge Rose's conduct and unnecessary delays violated the due process rights of detained aliens," such a complaint was a nonfrivolous allegation that could serve as the basis of a reasonable belief by Mr. Cassidy that "he was disclosing a violation of law, rule, or regulation in his communications with Judge Dean." *Cassidy v. Dep't of Justice*, DA-1221-11-0365-W-1, 2012 WL 1432407, at *4 (M.S.P.B. Apr. 25, 2012). The MSPB ruled that this was a question of fact that should be resolved by the administrative judge on remand. *Id.*

The MSPB also determined that Mr. Cassidy had made nonfrivolous allegations that, if substantiated, could satisfy the "knowledge/timing" test for determining whether allegedly protected disclosures were a contributing factor to his non-selection. *Id.* at *5–6. In particular, the MSPB determined that Mr. Cassidy's allegations could support a finding that Judge Dean, motivated by retaliatory animus, influenced DOJ officials on the selection panels and thus, that the decision-making DOJ officials had constructive knowledge of Mr. Cassidy's allegedly protected disclosures. *Id.* Furthermore, the MSPB determined that Mr. Cassidy's allegedly whistleblowing e-mail was sent within a period of time such that a reasonable person could conclude that it was a contributing factor to his non-selection for either the San Antonio or the Houston immigration judge positions. *Id.* Consequently, the MSPB had jurisdiction over Mr. Cassidy's complaint, and the administrative judge was required to adjudicate the merits of Mr. Cassidy's claim on remand.

On remand, the administrative judge heard testimony from several witnesses, including Mr. Cassidy, Judge Dean, Judge Rose, Judge O'Leary, and Mr. Snow. After reviewing their testimony and other evidence in the record, the administrative judge denied Mr. Cassidy's

request for corrective action. *Cassidy v. Dep't of Justice*, DA-1221-11-0365-B-1, at 2 (M.S.P.B. Sept. 27, 2012) (hereinafter, "Initial Decision"). The administrative judge determined that DOJ had proven by clear and convincing evidence that it would not have selected Mr. Cassidy for a position as an immigration judge in either San Antonio or Houston even if he had not made any protected disclosures under the WPA.

Mr. Cassidy then petitioned the MSPB for review of the administrative judge's decision. The MSPB rejected his petition and adopted the administrative judge's decision, concluding that Mr. Cassidy's arguments constituted "mere disagreement with the administrative judge's explained findings of fact and credibility determinations," which were "supported by the record and entitled to deference." *Cassidy v. Dep't of Justice*, DA-1221-11-0365-B-1, at 7 (M.S.P.B. Aug. 30, 2013) (hereinafter, "Final Order"). This appeal followed.

## II. DISCUSSION

Our review of MSPB decisions is narrowly defined and limited by statute. 5 U.S.C. § 7703(c). We must affirm a decision by the MSPB unless it is found to be unsupported by substantial evidence. *Id.*; *see also Kahn v. Dep't of Justice*, 618 F.3d 1306, 1312 (Fed. Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (citation and internal quotation marks omitted).

The WPA prohibits agencies from taking an adverse personnel action against an employee in retaliation for certain types of protected disclosures. The relevant WPA statute, 5 U.S.C. § 2302(b)(8)(A), is excerpted below:

(b) Any employee who has authority to take, direct others to take, recommend, or approve any per-

sonnel action, shall not, with respect to such authority—

. . .

(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—

(i) any violation of any law, rule, or regulation, or

(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . . .

If an adverse personnel action has been taken against an employee based on conduct protected under statutes such as the WPA, the MSPB will order corrective action if that protected activity was a "contributing factor" to the adverse personnel action. Per the governing statute, 5 U.S.C. § 1221(e)(1):

Subject to the provisions of paragraph (2), in any case involving an alleged prohibited personnel practice as described under section 2302(b)(8) . . . , the Board shall order such corrective action as the Board considers appropriate if the employee, former employee, or applicant for employment has demonstrated that a disclosure or protected activity described under section 2302(b)(8) . . . was a contributing factor in the personnel action which was taken or is to be taken against such employee, former employee, or applicant.

Thus, employees must show that a protected disclosure was a "contributing factor" to an adverse employment decision by a preponderance of the evidence. *Kewley v. Dep't of Health & Human Servs.*, 153 F.3d 1357, 1361 (Fed. Cir. 1998). One way for an aggrieved employee or applicant to make this showing is by providing evidence sufficient to meet the "knowledge/timing" test. This test is also codified in 5 U.S.C. § 1221(e)(1):

> The employee may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—
>
> (A) the official taking the personnel action knew of the disclosure or protected activity; and
>
> (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action.

By statute, once an employee satisfies the "knowledge/timing" test, the agency may rebut the employee's claim by showing by clear and convincing evidence "that it would have taken the same personnel action even in the absence of [the protected] disclosure." 5 U.S.C. § 1221(e)(2); *see also Chambers v. Dep't of Interior*, 602 F.3d 1370, 1375–76 (Fed. Cir. 2010).

Three non-exclusive factors, known as the *Carr* factors, are relevant in assessing whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action even in the absence of any alleged whistleblowing: 1) "the strength of the agency's evidence in support of its personnel action"; 2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision"; and 3) "any evidence that the agency takes

similar actions against employees who are not whistle-blowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The agency is not required to present evidence concerning all three of those factors; rather, "[t]he factors are merely appropriate and pertinent considerations for determining whether the agency carries its burden." *Whitmore v. Dep't of Labor*, 680 F.3d 1353, 1374 (Fed. Cir. 2012).

## A. San Antonio non-selection

Pursuant to 5 U.S.C. § 1221(e)(1), the MSPB found that Mr. Cassidy satisfied the "knowledge/timing" test by showing that Judge Dean was aware of Mr. Cassidy's e-mail in the October 2009 e-mail chain and that his May 2010 non-selection for the San Antonio position was within such time that a reasonable person could find that the disclosure contributed to the action. Initial Decision[2] at 8. The MSPB determined, however, that pursuant to 5 U.S.C. § 1221(e)(2), DOJ successfully rebutted any presumption that a WPA violation occurred by providing clear and convincing evidence that Mr. Cassidy would not have been selected for the San Antonio immigration judge position even if he had not made any protected disclosures. Substantial evidence supports the MSPB's findings.

The MSPB focused on the first two nonexclusive *Carr* factors: the strength of DOJ's evidence supporting its personnel action, and the existence of any motive to retaliate by the officials involved in the non-selection decision. The MSPB discounted the third *Carr* factor as less relevant, as the contested action was non-selection rather than punishment, and none of the other candidates

---

[2]    The MSPB adopted the findings in the administrative judge's Initial Decision pursuant to 5 C.F.R. § 1201.113(b). Final Order at 2.

for the position were alleged to have made protected
disclosures.

As for the first *Carr* factor, the MSPB noted that
Judge O'Leary and Mr. Snow had raised concerns about
Mr. Cassidy's temperament, which they testified was "a
very important quality for an [immigration] judge" and
was expressly listed as a "Quality Ranking Factor" for the
evaluation of candidates in the description of the position.
Initial Decision at 12. For example, the MSPB noted that
Ms. Sherman described Mr. Cassidy as "inflexible" on
legal issues and is someone "who either likes you or does
not." *Id.* at 11. Mr. Cassidy's only response to Ms. Sher-
man's comments is that she had no right to make those
comments because she is not a lawyer. *Id.* at 9. The
MSPB also noted that Judge Law felt Mr. Cassidy could
"get rough at times" and was not always "tactful." *Id.*
Indeed, Mr. Cassidy admitted during his testimony that
he is "less than tactful" on occasion and has been disre-
spectful to his supervisor, Mr. Goldman. *Id.* at 10. Final-
ly, the MSPB noted that Judge Rose, who had known Mr.
Cassidy for 15-20 years, believed Mr. Cassidy did not
have a good temperament and would be a "screamer" in
court. *Id.* at 11. Judge Rose believed Mr. Cassidy "lords"
over people and "lots of good people" had left the Chief
Counsel's office because of him. Initial Decision at 11.

In contrast, the MSPB found that Mr. Martinez was
described as "very even handed" and having an "even,
professional demeanor*." Id.* at 29. Judge O'Leary and
Mr. Snow both testified that they moved Mr. Cassidy from
the first to the second-ranked candidate for the San
Antonio position solely due to concerns that his tempera-
ment was not suited to the role of an immigration judge,
and the MSPB determined their testimony to be credible.
*Id.* at 12–13. We agree. Mr. Cassidy provides no genuine
basis to contest the MSPB's findings under this factor. In
fact, Mr. Cassidy admitted during his testimony that if he
had the comments of Ms. Sherman, Judge Law, and

Judge Rose before him and he was on the panel, he would not have selected himself for the San Antonio immigration judge position. *Id.* at 10.

Rather, Mr. Cassidy's primary challenge to the MSPB decision appears to be more directed to the second *Carr* factor: motive to retaliate. In particular, Mr. Cassidy contends that the MSPB should not have relied on Judge Dean's notes or Judge Rose's testimony concerning his temperament since they were "tainted" by Judge Dean's allegedly retaliatory motive. Appellant's Br. 22. The evidence relied on by the MSPB, however, supports the opposite conclusion: neither Judge Rose nor Judge Dean had any motive to retaliate against Mr. Cassidy based on Mr. Cassidy's e-mail in the October 2009 e-mail chain.

The MSPB concluded that "[t]here is no evidence in the record that shows Judge Law or Judge Rose were aware of [Mr. Cassidy's] disclosures to Judge Dean." Initial Decision at 29. Mr. Cassidy relies solely on the October 2009 e-mail chain as evidence that Judge Rose knew of his complaint to Judge Dean that Judge Rose was not "conscientious about his duties" and was "exceptionally slow" in adjudicating the cases before him. S.A. 85.[3] In the October 2009 e-mail chain, however, it was *Mr. Goldman*—and not Mr. Cassidy—who specifically raised these concerns. Further, Mr. Goldman's comments were directed at the Immigration Court at the Polk County Detention Facility, and not at a particular judge. Judge Rose's name never appears in the e-mail chain.

---

[3]    Mr. Cassidy's complaint also alleged that this delay violated a settlement agreement involving DOJ. Mr. Cassidy, however, was unable to produce this alleged agreement or identify the case which had resulted in the purported settlement. S.A. 90, 94.

In addition, Judge Dean testified that he frequently received complaints about immigration judges from both private and government attorneys and investigating those complaints was part of the ordinary course of his job duties. *Id.* at 10–11; Final Order at 5. The MSPB observed that Mr. Cassidy's witness Brett Bradford, an Assistant Field Office Director, testified that he had previously made complaints to Judge Dean similar to those allegedly made by Mr. Cassidy. Initial Decision at 14; Final Order at 6. Mr. Bradford admitted that he did not believe Judge Dean retaliated against him in any way because of *his* complaints. *Id.* The MSPB found Judge Dean and Mr. Bradford's testimony to be credible, and we see no reason to disturb those credibility determinations.

The MSPB also found that Judge Dean had followed standard procedures in "vouchering" both Mr. Cassidy and Mr. Martinez, the applicant eventually selected to fill the immigration judge position in San Antonio. In particular, internal "vouchering" procedures specified that evaluators should check the references listed by applicants as well as additional references, including judges the applicant may have appeared before and court administrators "who may be familiar with the professional conduct of the applicant." Initial Decision at 15; S.A. 58.

The MSPB rejected Mr. Cassidy's allegation that Judge Dean had contacted Judge Rose solely to obtain a negative reference. Instead, the MSPB found that Judge Dean had only interviewed Judge Rose after contacting another immigration judge listed as a reference by Mr. Cassidy. Mr. Cassidy's reference told Judge Dean that Mr. Cassidy had not appeared before him for a number of years, and suggested that Judge Dean talk to Judge Rose. Initial Decision at 11.

Mr. Cassidy also imputes ill motive to Judge Dean based on Judge Dean's testimony that he asked Mr. Goldman during the "vouchering" process how long it

would take for Mr. Cassidy to get into a fight with Judge Rose if Mr. Cassidy was selected for the San Antonio position. *Id.* at 12. But the MSPB found that Judge Dean did not inform anyone else of this discussion, and that this exchange did not affect Mr. Cassidy's "vouchering" sheets or demonstrate that Judge Dean had any motive to retaliate against Mr. Cassidy for Mr. Cassidy's e-mail in the October 2009 e-mail chain. *Id.* Further, Mr. Cassidy has no explanation for Judge Dean's positive review of Mr. Cassidy's initial interview for the Houston immigration judge position, where he commented that Mr. Cassidy was "[a]rticulate" and "[i]ndicate[d] substantial immigration knowledge and eagerness to get back into court." *Id.* at 12; S.A. 74. This interview occurred in March 2010, *after* Judge Dean's evaluation of Mr. Cassidy's candidacy for the San Antonio position. Indeed, Judge Dean's positive evaluation of Mr. Cassidy for the Houston position included no mention of the negative feedback from Ms. Sherman, Judge Law, or Judge Rose. Initial Decision at 28.

On review of the record as a whole, the MSPB found that Mr. Cassidy's accusation that Judge Dean negatively influenced the decision-making process of Judge O'Leary and Mr. Snow was not grounded in fact, but based on Mr. Cassidy's subjective—and unsupported—interpretations of the record. *Id.* at 16. The MSPB also determined that nothing in the record demonstrated that Judge O'Leary or Mr. Snow "w[ere] aware of any [of Mr. Cassidy's] protected disclosures or had any motive whatsoever to retaliate against [Mr. Cassidy]." *Id.* at 15. In large part, Mr. Cassidy merely urges us to reweigh the evidence before the MSPB and to reach a different conclusion as to the meaning of documentary evidence and credibility of witness testimony than did the MSPB. This is not our function. *See Bieber v. Dep't of Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) ("[R]e-weigh[ing] conflicting evidence . . . is not our function."). Substantial evidence in the record

supports the MSPB's findings that DOJ met its burden to establish Mr. Cassidy would not have been selected for the San Antonio position even if Mr. Cassidy had not made any protected disclosures.

### B. Houston non-selection

Substantial evidence also supports the MSPB's conclusion that DOJ demonstrated by clear and convincing evidence Mr. Cassidy would not have been selected for the Houston immigration judge position even if he had not made any protected disclosures. For example, evidence under all three *Carr* factors supports a conclusion that no WPA violation occurred.

As for the first *Carr* factor, the MSPB noted that Judge Dean interviewed Mr. Cassidy as part of the "vouchering" process for the Houston immigration judge position. Initial Decision at 12. Judge Dean described Mr. Cassidy as "articulate" and as having "substantial immigration knowledge" and an "eagerness to get back into court." *Id.* Based in part on Judge Dean's positive "vouchering sheets," Judge O'Leary and Mr. Snow initially ranked Mr. Cassidy as the top candidate for the Houston position. *Id.* at 13; S.A. 179–80. The MSPB found Mr. Snow's testimony credible that although the DOJ selection panel for the Houston position interviewed Mr. Cassidy first, it decided to interview the second- and third-ranked candidates because of Mr. Cassidy's mediocre interview performance. Mr. Cassidy contends that nothing in the record supports DOJ's "unsubstantiated assertion" that he "interviewed poorly." Appellant's Br. 38. According to Mr. Snow, however, Mr. Cassidy provided "facile" responses to questions and did not "always answer the questions asked." Initial Decision at 13; S.A. 79.

As for the second *Carr* factor, even Mr. Cassidy concedes that "none of the final decision makers [for the Houston immigration judge position] had any reason to

retaliate." Appellant's Br. 24. Those DOJ "decision makers" simply decided not to select Mr. Cassidy because of his poor interview. And as discussed *supra*, Mr. Cassidy's contention that Judge Dean was trying to "sabotage" his candidacy because of the October 2009 e-mail chain is undermined by the favorable "vouchering sheets" for Mr. Cassidy submitted by Judge Dean to Judge O'Leary and Mr. Snow. As for the third *Carr* factor, the MSPB found that Mr. Snow's testimony was bolstered by the fact that the DOJ panel also passed over the second-ranked candidate for the same reason as Mr. Cassidy: an unimpressive interview. Initial Decision at 15.

* * *

We have considered Mr. Cassidy's remaining arguments concerning the San Antonio and Houston immigration judge positions and find them unpersuasive.

### III. CONCLUSION

Substantial evidence supports the MSPB's determination that DOJ, by clear and convincing evidence, demonstrated Mr. Cassidy would not have been selected for either the San Antonio or the Houston immigration judge position even if he had not made any protected disclosures. The MSPB's decision to deny Mr. Cassidy corrective action is therefore

**AFFIRMED.**