**Katherine McLAUGHLIN, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT,
Respondent.**

No. 03–3049.

United States Court of Appeals, Federal Circuit.

Jan. 6, 2004.

John W. Hart, of Virginia Beach, VA, argued for petitioner.

---

David R. Feniger, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were David M. Cohen, Director; Donald E. Kinner, Assistant Director; and E. Michael Chiaparas, Trial Attorney.

Before MAYER, Chief Judge, CLEVENGER and GAJARSA, Circuit Judges.

CLEVENGER, Circuit Judge.

Katherine McLaughlin ("McLaughlin") seeks review of a final decision of the Merit Systems Protection Board ("Board") denying her application for disability retirement as untimely because it was filed after the one-year statutory filing deadline. *McLaughlin v. Office of Pers. Mgmt.*, No. DC844E020184–I–1, 2002 WL 31188838 (M.S.P.B. Sept.19, 2002). This case presents the question of what standard of review we apply to a Board determination that a separated employee is not entitled to a waiver of the one-year statutory filing deadline because she was not mentally incompetent during the year following separation. *See* 5 U.S.C. § 8453 (2000). Because the determination that an applicant is not entitled to a waiver for mental incompetence does not go to the merits of the factual determination of disability, we review for substantial evidence. In this case, substantial evidence supports the Board's conclusion that McLaughlin was not mentally incompetent during the statutory filing period, so we affirm the Board's decision that she is not entitled to a waiver of the deadline.

I

By statute, an application for disability retirement under the Federal Employees Retirement System [1] (FERS) may be con-

sidered on its merits if the application is filed with the Office of Personnel Management (OPM) within one year of separation from service. *Deerinwater v. Office of Pers. Mgmt.*, 78 F.3d 570, 573 (Fed.Cir. 1996). The time limitation on filing the application may be waived where the applicant was mentally incompetent during a statutorily defined time. The relevant statutory section reads:

> A claim may be allowed under this subchapter only if application is filed with the Office before the employee or Member is separated from the service or within 1 year thereafter. This time limitation may be waived by the Office for an employee or Member who, at the date of separation from service or within 1 year thereafter, is mentally incompetent if the application is filed with the Office within 1 year from the date of restoration of the employee or Member to competency or the appointment of a fiduciary, whichever is earlier.

5 U.S.C. § 8453 (2000).

As the statute clearly states, a "claim may be allowed ... *only if* the application is filed ... before ... separat[ion] ... or within 1 year thereafter." *Id.* (emphasis added). The only exception is that the "time limitation may be waived" if the employee is "mentally incompetent" during the filing period. For this reason, an application that is untimely and not entitled to a waiver for mental incompetence is not considered. *Deerinwater*, 78 F.3d at 573 (Fed.Cir.1996) (holding that OPM lacks the authority to consider an untimely application); *cf. Killip v. Office of Pers. Mgmt.*, 991 F.2d 1564, 1570 (Fed.Cir.1993) (holding that OPM is not permitted to consider retirement elections where the statute does not grant authority to do so).

**1.** *See* 5 U.S.C. §§ 8401–8479 (2000).

## II

McLaughlin was employed by the Department of the Navy as a Supervisory Housing Management Assistant. On January 29, 2000, McLaughlin resigned, citing the stress, "minimal awards and/or promotions," and her feeling that she had "not been recognized or appreciated for [her] cost-saving efforts and workload." At the time of her retirement, McLaughlin was enrolled in FERS.

According to a medical evaluation dated January 4, 2001, McLaughlin began experiencing paresthesias in her right face, arm, and leg as early as November of 2000. Dr. Nash, the physician performing the evaluation, opined that McLaughlin's symptoms could have been caused by seizures or multiple sclerosis ("MS"). Dr. Nash's evaluation reported McLaughlin's mental status as normal. To further investigate McLaughlin's symptoms, Dr. Nash ordered an EEG and an MRI. On January 15, 2001, Dr. Nash reviewed the results and diagnosed McLaughlin with MS. Dr. Nash again noted that [McLaughlin's] "mental status and neurological examination are normal." Dr. Nash further noted that McLaughlin "took the diagnosis very well." On January 19, 2001, McLaughlin received a second opinion confirming the diagnosis of MS. The second opinion was given by Dr. Holland. In a letter dated August 8, 2001, Dr. Holland stated that McLaughlin's "other major complaint [on January 19, 2001] was some depression."

On January 29, 2001, the one-year time period prescribed by 5 U.S.C. § 8453 for McLaughlin to file an application for disability retirement expired.

On July 12, 2001, OPM received McLaughlin's application for disability retirement. The application claimed McLaughlin's diseases or injuries to be MS, depression, and migraines. It further stated that she had become disabled before January 28, 2001, but that the exact date was unknown.

On July 24, 2001, McLaughlin requested that OPM waive the statutory filing period. On August 8, 2001, Dr. Holland wrote the above-referenced letter in support of McLaughlin. The letter does not state that McLaughlin was mentally incompetent during the year following her separation. On September 4, 2001, McLaughlin was evaluated by Dr. Spiegel who concluded that: "It is belief that the patient was profoundly depressed during the time period requiring her to act on [retirement and health insurance] and, as a result of this depression was unable to do so."

OPM denied McLaughlin's request for a waiver because a review of the letters submitted by Drs. Nash, Holland, and Spiegel did not provide sufficient medical documentation that McLaughlin was incompetent during the relevant statutory period. McLaughlin requested reconsideration, and OPM affirmed its initial decision.

McLaughlin appealed to the Board. The administrative judge ("AJ") considered the medical evidence, as well as testimonial evidence from McLaughlin, her father, and a friend. Concluding that the submitted "medical evidence does not establish that the appellant was mentally incompetent during the one-year filing period at issue," the AJ affirmed the decision of OPM. *McLaughlin v. Office of Pers. Mgmt.*, No. DC844E020184–I–1 (M.S.P.B. Apr.12, 2002). The decision became final when the Board denied McLaughlin's petition for review. *McLaughlin v. Office of Pers. Mgmt.*, No. DC844E020184–I–1, 2002 WL 31188838 (M.S.P.B. Sept.19, 2002). McLaughlin timely appealed to this court. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9) (2000).

## III

In this case, a former federal employee seeks review of a final decision of the Board that she was not entitled to a waiver of the one-year statutory filing deadline provided in 5 U.S.C. § 8453 because her submitted medical evidence did not establish that she was mentally incompetent during the year following her resignation. We first address the question of what standard of review we apply to that decision.

## A

As a general rule, we affirm a decision of the Board unless it is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (2000); *Marino v. Office of Pers. Mgmt.*, 243 F.3d 1375, 1377 (Fed.Cir.2001). However, in cases involving disability retirement this court is precluded, in part, from that level of review by *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

*Lindahl* addressed an appeal arising under the Civil Service Retirement System (CSRS).[2] The statutory section at issue in *Lindahl*, section 8347(c), currently reads in relevant part: The Office shall determine questions of disability and dependency arising under this subchapter. Except to the extent provided under subsection (d) of this section, the decisions of the Office concerning these matters are final and conclusive and are not subject to review. 5 U.S.C. 8347(c) (2000). During the time relevant to this appeal, the language, concerning these matters are final and conclusive and are not subject to review has not changed. *Compare* 5 U.S.C. 8347(c), *with Lindahl*, 470 U.S. at 773, 105 S.Ct. 1620.

*Lindahl* involved a former Navy employee who filed an application for disability retirement based on the disability of

acute and chronic bronchitis. *Id.* at 775, 105 S.Ct. 1620. The Board affirmed OPMs denial of disability retirement because Lindahl had not proved that his disability [was] severe enough to prevent useful, efficient, and safe performance of the essential duties of the position from which [Lindahl was] seeking retirement. *Id.* at 776, 105 S.Ct. 1620 (citations omitted).

Lindahls case eventually made its way to this court, where, en banc, we held that the language of section 8347(c) stating that the decisions of [OPM] concerning [questions of disability] are final and conclusive and are not subject to review, prevented judicial review of Lindahls case. *Lindahl v. Office of Pers. Mgmt.*, 718 F.2d 391, 393 (Fed.Cir.1983) (It is difficult to conceive of a more clear-cut statement of congressional intent to preclude review than one in which the concept of finality is thrice repeated in a single sentence.).

Reversing, the Supreme Court explained that our interpretation of final and conclusive and are not subject to review was overbroad because we failed to distinguish between the factual determinations concerning disability questions and other questions of law and procedure pertaining to disability retirement. In the Courts words:

> We do not share the Federal Circuit's certainty with respect to the plain import of the statutory language. To begin with, while 8347(c) plausibly can be read as imposing an absolute bar to judicial review, it also quite naturally can be read as precluding review only of OPM's *factual* determinations about questions of disability and dependency. Under this reading of 8347(c)'s language, the factual question whether an applicant is disabled is quite distinct

---

**2.** Currently, 5 U.S.C. 8331–8351 (2000).

from questions of what laws and procedures OPM must apply in administering the Retirement Act.... [W]hen Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive than that set forth in 8347. Congress' failure to use similar language in 8347(c) therefore reinforces the possibility that the finality bar may extend only to OPM's *factual* determinations with respect to disability and dependency questions.

*Lindahl*, 470 U.S. at 779–80, 105 S.Ct. 1620 (footnote omitted; emphasis in original).

Finding this reading supported by the legislative history, the Court held that while the factual underpinnings of section 8347 disability determinations may not be judicially reviewed, such review is available to determine whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some error going to the heart of the administrative determination. *Id.* at 791, 105 S.Ct. 1620 (citing *Scroggins v. United States*, 184 Ct.Cl. 530, 397 F.2d 295, 297, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968)). We have recently reaffirmed that our review authority under *Lindahl* is constrained regarding determinations of disability made in connection with applications for disability retirement. *See Licausi v. Office of Pers. Mgmt.*, 350 f.3D 1359, 1360 (Fed.Cir.2003).

When the question is whether an applicant should be excused from normal filing deadlines due to mental incompetence, our ordinary review authority is not affected. As noted at the outset, review of whether an applicant should be excused from the normal filing deadlines for mental incompetence does not require a review of a disability determination. *See Deerinwater*, 78 F.3d at 573; *Killip*, 991 F.2d at 1570. This makes sense from a procedural standpoint, and likewise makes sense because disability and mental incompetence for the purposes of waiving the one-year filing deadline examine different facts. A person mentally incompetent for purposes of the waiver may not be, ultimately, determined disabled. Moreover, disability under the statute[3] does not require mental incompetence. Because review of a decision on mental incompetence during the statutory filing period does not implicate the constraints of *Lindahl*,[4] we affirm the Board unless its decision is arbitrary, capricious, an abuse of discretion, not in accordance with the law, or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (2000).

Although *Lindahl* considered the standard of review permitted by 5 U.S.C. 8347(c) of the CSRS, we have applied the teachings of *Lindahl* to disability retirement under 5 U.S.C. 8461(d)[5] of the FERS. *See Anthony v. Office of Pers. Mgmt.*, 58 F.3d 620, 625–26 (Fed.Cir.1995). Accordingly, section 8461(d), like section 8347(c), preserves our ordinary review au-

---

**3.** *See* 5 U.S.C. 8451(a)(1)(B) (2000) (For purposes of this subsection, an employee shall be considered disabled only if the employee is found by the Office to be unable, because of disease or injury, to render useful and efficient service in the employee's position.); *cf.* 5 C.F.R. § 844.102 (2003) (*Disabled* and *disability* means unable or inability, because of disease or injury, to render useful and efficient service in the employee's current position.) (emphasis in original).

**4.** We note that the government agrees with our conclusion that *Lindahl* is not applicable to the determination of our standard of review of questions of waiver based on mental incompetence.

**5.** This section also contains the so-called finality clause: the decisions of [OPM] concerning these matters are final and conclusive and are not subject to review. 5 U.S.C. 8461(d) (2000).

thority when we are not reviewing determinations of disability made in connection with applications for disability retirement.

## IV

Based on McLaughlin's resignation date of January 29, 2000, the last day on which OPM could have received her timely application was on January 29, 2001. 5 U.S.C. § 8453. In this case, OPM received McLaughlin's application on July 12, 2001. Because of this court's holding in *Deerinwater*, OPM could not consider the merits of McLaughlin's disability claim unless she could establish that she was mentally incompetent during the statutory filing period. 78 F.3d at 573. Thus, the question the Board considered was whether McLaughlin "showed that she was mentally incompetent on January 29, 2000, or within one year thereafter." *McLaughlin v. Office of Pers. Mgmt.*, No. DC844E020184–I–1 (M.S.P.B. Apr.12, 2002).

█ Section 8453 of the FERS provides the same time limitation and waiver provisions as 5 U.S.C. § 8337(b). Section 8337(b) applies to disability retirement arising under the CSRS. The similarity of language and purpose, namely limiting the time allowed for filing disability retirement applications and the granting of a waiver for those mentally incompetent during the relevant period, strongly argues for the same construction of each section. *See Anthony*, 58 F.3d at 626 (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756, 760, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), and *Northcross v. Memphis Bd. of Educ.*, 412 U.S. 427, 428, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)).

We have held that section 8337(b) is mandatory, not permissive. *French v. Office of Pers. Mgmt.*, 810 F.2d 1118 (Fed. Cir.1987). That is, when an applicant establishes mental incompetency during the relevant statutory period, OPM must treat the application as timely. *Id.* at 1119. We have further held that, under section 8337(b), an applicant can establish mental incompetence and be entitled to a waiver of the statutory deadline even if the applicant is "one having some minimal capacity to manage his own affairs, and not needing to be committed. The claimant is not required to have been a raving lunatic continuously" during the relevant period. *Id.* at 1120.

Applying the standard from *French*, the Board reviewed medical evidence as well as testimony from McLaughlin, her father, and a friend. That evidence included records of medical examinations administered by Dr. Nash during the statutory filing period. They report McLaughlin's mental status as normal. Dr. Holland's letter reflects only that McLaughlin had "some depression" before the end of the statutory period. Finally, Dr. Spiegel performed an "Initial Psychiatric Evaluation" on McLaughlin in September of 2001, approximately eight months after the statutory deadline. At the end of his report, in the "Plan" section, Dr. Spiegel notes: "It is belief that the patient was profoundly depressed during the time period requiring her to act on [retirement and health insurance] and, as a result of this depression was unable to do so."

The strongest medical evidence in the record to support mental incompetence is the foregoing medical assessment by Dr. Spiegel. The Board discounted somewhat Dr. Spiegel's assessment on the ground that his evaluation was dated September 4, 2001, considerably after the end of the filing period. To the extent the Board discounted Dr. Spiegel's assessment on the ground that it was written after the filing period, we disagree. The mere fact that a medical assessment is committed to paper outside the filing period is not probative of

whether the applicant was mentally incompetent during the filing period. Even so, Dr. Spiegel's assessment is not dispositive in favor of McLaughlin because Dr. Spiegel never asserts that he personally observed McLaughlin during the filing period.

A Board decision is unsupported by substantial evidence when it lacks "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir. 1984) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

Were Dr. Spiegel's assessment the only evidence of record, no doubt the Board could have concluded that substantial evidence supported McLaughlin's claim to mental incompetence during the statutory period. However, as noted above, the record contains Dr. Nash's contemporaneous assessments of McLaughlin that point toward mental competence. In this circumstance, we cannot say the Board's decision is unsupported by substantial evidence.

### COSTS

No costs.

*AFFIRMED.*