NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARY S. SCHNELL,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2015-3006

---

Petition for review of the Merit Systems Protection Board in No. CH-1221-07-0700-X-2.

---

Decided: March 25, 2015

---

GARY S. SCHNELL, Sparta, WI, pro se.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOYCE R. BRANDA, ROBERT E. KIRSCHMAN, JR., STEVEN J. GILLINGHAM.

---

Before NEWMAN, O'MALLEY, and WALLACH, *Circuit Judges.*

PER CURIAM

Petitioner Gary Schnell appeals the final order of the Merit Systems Protection Board ("Board") dismissing his petition for enforcement of the Board's order requiring the Army ("Agency") to promote Petitioner to an appropriate position at the GS-12 level effective October 31, 2006, and to pay him back pay with interest from that date to January 15, 2011. *Schnell v. Dep't of the Army*, No. CH-1221-07-0700-X-2 (M.S.P.B. Aug. 21, 2014) (Resp't's App. 146–56) ("Final Order"). Because substantial evidence supports the Board's finding that the Agency complied with its directive regarding the appropriateness of Mr. Schnell's job placement and the sufficiency of the interest payments, this court affirms.

## BACKGROUND

In March 2003, Mr. Schnell worked as a Supervisory Quality Assurance Specialist (GS-0301-11) in the Directorate of Support Services ("DSS") at Fort McCoy, Wisconsin. In this position, Mr. Schnell authored a Quality Assurance Surveillance Plan ("QASP") for work performed on a $109 million contract and supervised eighteen quality assurance employees. In an effort to allow for more subjective government inspections, Mr. Schnell revised the QASP seventeen times. However, he acknowledged that he was too inexperienced to develop a QASP that properly protected the Agency's interests.

In December 2004, when Mr. Schnell's QASP was still in use, the Army Audit Agency ("AAA") began an audit of Fort McCoy's inspection procedures. Mr. Schnell "disclosed problems with the inspection process and other matters to AAA auditors." Final Order at 4  In July 2006, the AAA issued its audit report and found "Fort McCoy must improve its monitoring of contractor performance." *Id.*

Mr. Schnell's superiors informed him that the directorate he worked for would be reorganized, the DSS A-76 contract, for which he monitored performance of other employees was about to expire and that his position would be abolished. Mr. Schnell subsequently "applied for promotion to Facility Operations Specialist, GS-1640-12, a temporary position to become effective October 2006." *Id.* He was not selected for this position.

In 2008, the DSS A-76 contract ended, and was replaced by several smaller contracts. The Agency reorganized and divided the DSS into the Directorate of Public Works and the Directorate of Logistics. Later that year, the Agency realigned Mr. Schnell's position to the Directorate of Public Works, where he supervised off-post employees performing quality assurance work until all remaining contracts were awarded. Before his realignment to another directorate, Mr. Schnell's position and pay were evaluated under the Total Army Performance Evaluation System ("TAPES"). However, post realignment, his pay was set according to the National Security Personnel System ("NSPS"),[1] which had different evaluation and rating procedures.[2]

"On February 1, 2009, the Agency abolished Mr. Schnell's position and laterally reassigned him to Environmental Protection Specialist, GS-0028-11." Resp't's App. 80. Upon reassignment, Mr. Schnell "expressed concerns that the Environmental Protection Specialist

---

[1] The NSPS was a pay for performance system created in 2004 under the authorization of Congress for the United States Department of Defense.

[2] The Agency later abandoned its use of NSPS and transferred affected employees back to the GS system. During the period in which Mr. Schnell's back pay award and interest payments were being calculated, the Agency reverted to using the GS payment schedule.

position 'might be declared illegal in six months or a year' because '[t]here needs to be a much sharper delineation between what is in the contract and what is not in the contract.'" Resp't's App. at 79.

## I.    Procedural History

On March 20, 2007, Mr. Schnell filed a complaint with the Army's Office of Special Counsel ("OSC") asserting the Agency "cut him out of quality assurance for the DSS A-76 contract, threatened to eliminate his position, and denied him a temporary promotion to Facility Operations Specialist in reprisal for protected whistleblowing." *Id.* On July 23, 2007, the "OSC terminated its inquiry into [Mr. Schnell's] allegations and notified him of his right to seek corrective action from the Board." *Id.*

On September 25, 2007, Mr. Schnell filed an Individual Right of Action ("IRA") appeal under the Whistleblower Protection Act ("WPA") with the Board. This action was dismissed for lack of jurisdiction by the Administrative Judge ("AJ") on January 25, 2008. The Board adopted the AJ's decision, denying Mr. Schnell's petition for review in a final order. *See Schnell v. Dep't of the Army*, No. CH-1221-07-0700-W-1 (M.S.P.B. July 3, 2008). Mr. Schnell appealed the Board's decision. This court vacated the Board's July 3, 2008 Final Order and remanded the case for further proceedings related to his whistleblower allegations. *Schnell v. Dep't of the Army*, 345 F. App'x 537 (Fed. Cir. 2009).

On June 18, 2009, the AJ issued a remand decision finding the Board had jurisdiction of Mr. Schnell's IRA appeal, but denying him corrective action on the merits of his claim. The AJ found Mr. Schnell "did not show by a preponderance of the evidence that a protected disclosure was 'a contributing factor' in a personnel action." *Id.*

On April 20, 2010, the Board granted Mr. Schnell's petition for review. The Board issued an Opinion and

Order, granting Mr. Schnell's request for corrective action and ordering the Agency to promote him to grade GS-12, effective October 31, 2006. *See Schnell v. Dep't of Army*, 114 M.S.P.R. 83, 85 (2010). The Board determined Mr. Schnell's "non-selection for a temporary promotion and the threatened elimination of his position are personnel actions under the WPA and that the [A]gency has failed to prove by clear and convincing evidence that it would have taken those personnel actions in the absence of protected whistleblowing disclosures." Resp't's App. 81 (citing *Schnell*, 114 M.S.P.R. at 95).

Per the Board's order, "the Agency processed [Mr. Schnell's] temporary promotion to Facility Operations Specialist, GS-1640-12, from October 31, 2006, to September 30, 2007." *Id.* On May 14, 2010, Mr. Schnell filed a petition for enforcement seeking further compliance with the Board's order regarding his promotion. The AJ found that the Army failed to demonstrate full compliance with the Board's order and recommended that the Board grant Mr. Schnell's petition.

On June 16, 2011, the Board remanded Mr. Schnell's petition for further evidentiary proceedings concerning his job placement and back pay. The Board held that "the [A]gency failed to provide sufficient evidence showing the appellant received the back pay with interest to which he [was] entitled." Resp't's App. 82. With respect to Mr. Schnell's promotion, the Board determined the Agency did not provide a sufficient explanation for placing him in the Environmental Engineer position and did not address his "argument that the position is not substantially equivalent in its status and duties to his former Supervisory Quality Surveillance Specialist position." *Id.*

On remand, the AJ conducted a hearing regarding the appropriateness of Mr. Schnell's corrective action placement and the sufficiency of the interest payments on his award of back pay. The Agency provided witnesses and

both parties provided additional documentary evidence. **[*Id*.]** On the basis of evidence gathered at the hearing, the AJ determined Mr. Schnell's post-corrective action "position was substantially equivalent in scope and status to the duties of the appellant's former position, as well as to the temporary Facility Operations Specialist position to which he was denied a promotion." Final Order at 2 (footnote omitted).

However, the AJ "found that the [A]gency failed to demonstrate that the appellant received the correct interest on his back pay in light of errors the [A]gency made that were discussed, but not fully explained, by its witnesses at the hearing." *Id*. at 2–3 (citing Remand Recommendation at 10). Finally, the AJ determined that because the Agency conceded Mr. Schnell was working in an inappropriate position during the part of the back pay period when the NSPS was in effect, Mr. Schnell's performance ratings should have been increased based on his performance evaluations in prior years.

In response to the AJ's recommendation, the Agency provided additional documents showing Mr. Schnell's back pay and interest payments were calculated properly, Final Order at 4, and that retroactively increasing Mr. Schnell's performance ratings under the NSPS pursuant to the AJ's order would have had an adverse effect on his back pay award.[3] *Id*.

---

[3] The Board requested the Agency provide an explanation for why it failed to make the recalculations of back pay and interest in order to reflect Mr. Schnell's performance rating during the NSPS period. Final Order at 4. In response, the Agency asserted "it had not made the changes because of evidence that it submitted showing a re-creation of the NSPS rating and pay pool for [Mr.

Upon review of the AJ's evidentiary hearing findings, the Board determined the Agency was in compliance with the Board's decision and dismissed Mr. Schnell's petition for enforcement. Final Order at 9. Mr. Schnell appeals, this court has jurisdiction under 28 U.S.C. § 1295(a)(9) (2012).

DISCUSSION

I.    Standard of Review

This court's review of a decision of the Board is limited by statute. The Board's decision must be affirmed unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2012); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

This court must set aside a Board decision "unsupported by substantial evidence when it lacks such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (internal quotation marks and citations omitted).

II. Mr. Schnell Is Not Entitled to a Higher Rating<br>Under NSPS

On appeal, Mr. Schnell contends that because he was given "exceptional ratings, ('1's') in the TAPES system,"[4]

---

Schnell] would significantly reduce his pay below what he already received." *Id.*

[4]    Under TAPES, performance evaluations ranged from a high of number "1" to a low of number "5." A number "5" rating was considered unsuccessful. The number range "3" to "1" were considered "successful" with the number "3" being low and number "1" considered

he should have been provided an equivalent evaluation under the new NSPS performance rating system. Pet'r's Br. 10. According to Mr. Schnell, "[s]ix weeks after the first [A]gency submission . . . they changed the rating type [back] to TAPES and gave me a 'fully successful' '3' rating in the TAPES System." Pet'r's Br. 10–11. Mr. Schnell asserts that he "was [previously] rated 'exceptional' ('1') not 'fully successful' ('3') under the TAPES system." According to Mr. Schnell, the problem was "that [the] rating system changed from TAPES to NSPS." *Id.* at 11.

The Board credited the testimony of Mr. Schnell's former supervisor, Darrell Neitzel, who according to the Board "persuasively testified that the higher rating under the NSPS that [Mr. Schnell] seeks would not have been the equivalent of the rating that he received for the preceding period under the previous appraisal plan [TAPES] because of differences in the two plans." Final Order at 5 n.4. Mr. Neitzel testified that

> [b]ecause according to the NSPS rating criteria, if you did everything that you were supposed to do as a requirement of your job, that was considered a Level 3. As I said, this is where NSPS, the criteria used in evaluations was much different than our old TAPES system where pretty much everybody got top-block whether you just did your job or not.
>
> *But in the NSPS system, the fully complying, or completing all of the requirements of your position was considered you were operating at Level 3.* In order to get to a 4 or a 5, which is a higher rating,

---

high. Pet'r's Br. 9–10. Conversely, under NSPS, this order was inverted such that the highest performers were ranked as number "5" and lower performers received number "1." *Id.*

you had to have demonstrated that you did, that you went above and beyond the normal expectation of the position.

Resp't's App. 74–75 (emphasis added).

Mr. Schnell argues the Agency should have granted him a higher rating because he went "above and beyond" and because he "blew the whistle on several areas of deficiency and, in all likelihood, effected some positive changes." Pet'r's Br. 12.

Mr. Schnell's contention is unsupported by record evidence. During his testimony, in providing instances that would compel a higher performance rating, his supervisor, Mr. Neitzel outlined additional actions that an employee must take before being granted a higher performance rating under NSPS. Specifically, Mr. Neitzel testified that such an employee would have to "have taken some special initiative to have gone out perhaps and created some training program or [would have to have] developed some new processes for the organization." Resp't's App. 76. Thus, unlike the TAPES system, NSPS requires more than an employee's satisfactory performance of a particular task. Mr. Neitzel's testimony provides evidence that NSPS and TAPES performance evaluation systems are fundamentally distinct.

Here, Mr. Schnell does not provide any support for his contention that, under NSPS, the only factor required for a higher performance rating is for an employee to go "above and beyond" the necessary requirements for the performance of a job. Because the Agency articulated additional factors considered for a higher performance rating, substantial evidence supports the Board's finding that the higher performance rating sought by Mr. Schnell under NSPS would not have been equivalent to his rating under TAPES.

### III. Mr. Schnell's Back Pay and Interest Payments Were Properly Calculated

Mr. Schnell next argues the Agency miscalculated his back pay and interest payments. He argues he was provided the same amount of back pay and interest irrespective of the AJ's recommendation that the Agency should replace his level 2 performance rating for the time he worked as a GS-11 Environmental Protection Specialist during the part of the back pay period when the NSPS was in effect, with a level 3 fully successful rating.

The Board credited the Agency's determination that it expressly made no changes to his back pay and interest payments because it submitted evidence "showing a recreation of the NSPS rating and pay pool for [Mr. Schnell] would significantly reduce his pay below what he already received." Final Order at 4.

Mr. Schnell does not direct the court to any evidence contradicting the Agency's contention concerning its reason for using the TAPES as opposed to the NSPS rating schedule. Instead, Mr. Schnell argues "[t]he [A]gency submitted no evidence or documentation to back up [its decision to use TAPES instead of NSPS]. I believe the Board erroneously accepted this statement without any evidence." Pet'r's Br. 15.

In its response to the AJ's order dated November 5, 2013, the Agency provided exhibits showing that any effort to recreate the NSPS rating and pay pool for Mr. Schnell for 2008 and 2009 would be less favorable to him than the current disposition. For example, with respect to 2008, the Agency noted:

> By moving [Mr. Schnell] to the TAPES system, he in fact had a 2008 year end salary of $78,381. . . . This is due to the award of a Within Grade Increase (WGI) on [Nov. 9 2008]. The WGI would not have been available to [Mr. Schnell] were he

in NSPS. [Mr. Schnell] also received a 1.5% pay increase under TAPES that would not have been available to him under NSPS.

Resp't's App. 140 (internal citation omitted).

Here, because the Agency has presented evidence supporting its assertion that Mr. Schnell's back pay and interest payments were higher under TAPES and because Mr. Schnell has failed to present any evidence refuting this claim, this court finds substantial evidence supports the Board's determination that the Agency's use of NSPS would have adversely impacted Mr. Schnell's back pay and interest payments.

Mr. Schnell next argues the Agency made a "major error" in its calculations of his 2006 base salary. Pet'r's Br. 16. Specifically, Mr. Schnell asserts "the base salary should be $64,585.00 not $63,928.00 as shown in [the Agency's] calculations" because "the [A]gency failed to take [his] retroactive promotion to GS-12, Step 6, effective [October 31, 2006], into account." *Id*. at 16.

The Agency contends Mr. Schnell "knew that the base salary used in [its] calculations for the first year was $63,928 because the [Agency] pointed it out in the pages that Mr. Schnell admits he received." Resp't's Br 14. The Agency also argues "[e]ven if [this court] were to accept [Mr. Schnell's] clams about an incorrect 2006 starting salary, [Mr. Schnell] failed to demonstrate that using the 'correct' starting salary would have resulted in higher pay under the NSPS than under TAPES." *Id*. Furthermore, the Agency contends that this salary "was clearly identified as the starting salary in the 'NSPS Payout Reconstruction' table that Mr. Schnell also concedes he received" and "[r]ather than provide the [B]oard with evidence in an effort to show that the [Agency's] calculations were incorrect, [Mr. Schnell] failed to act for nine months and only now alleges errors before this Court." Resp't's Br. 14.

This court has held that "in situations where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below." *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed. Cir. 2002). Specifically, *Forshey* teaches "a court of appeals may require less precision in the presentation of the issue to the lower court than it demands of a litigant represented by counsel." *Id.*

Although *Forshey* allows this court to be less stringent in requiring an issue to be presented before the Board, even under a less stringent approach, Mr. Schnell cannot now present his argument. Here, Mr. Schnell never presented to the Board or to the AJ his argument that the Agency employed the incorrect base salary because it failed to account for the Board's order to promote him to the GS-12 grade level effective October 31, 2006.

Furthermore, as asserted by the Agency, the NSPS Payout Reconstruction for the years 2007 and 2008 was provided to Mr. Schnell. Mr. Schnell does not assert that he did not receive this document, nor does he present any extenuating or limiting circumstance that impeded his ability to present this information to the Board. Therefore, Mr. Schnell has waived this argument.

IV. The Board Correctly Determined the Agency's Placement of Mr. Schnell in the Environment Engineer, GS-12, Position Complied With Its Decision

The Board concluded the Agency's placement of Mr. Schnell in an Environmental Engineer (GS-12) position was in accordance with its directive. Final Order at 7. The Board affirmed the AJ's determination that Mr. Schnell's position as a GS-12 Environmental Engineer was "substantially equivalent in scope and status to the position he would have received absent his whistleblowing." *Id.* In response to Mr. Schnell's contention that he does not perform the most significant duties of his posi-

tion, the Board determined Mr. Schnell has "not pointed to any specific evidence in the record before the [AJ] that shows she erred in finding that he did not occupy a sham position." *Id.* at 8. Specifically, the Board concluded that the duties such as "developing significant environmental compliance policies and procedures . . . or serving as a contract officer representative[,] . . . are only some of the varied higher level responsibilities of his position." *Id.*

On appeal, Mr. Schnell contends that he did not perform the majority of duties set forth for the Environmental Engineer position. Specifically, he asserts that in total, he "did about 10% to 20% of what was listed in the job description." Pet'r's Br. 23.

The Agency argues that "to the extent [Mr. Schnell] did not perform some of the job responsibilities, the [B]oard noted statements from [Mr. Schnell's] supervisors indicating that [he] failed to perform various assigned duties, not that he had no responsibility for those duties." Resp't's Br. 16. For example, the Agency cites a Senior System Civilian Evaluation Report where a performance appraisal states that Mr. Schnell "works in accordance with his own agenda instead of working toward goals prescribed by Senior Management." *Id.* (citing Resp't's App. 117).

In response to the Agency's contention that he failed to perform the tasks assigned to him as opposed to having no responsibility for their performance, Mr. Schnell cites a report stating: "[m]eeting a suspense date means that the product has been reviewed and approved by the supervisor. Some leniency will be given if the supervisor requires more than a week to review." Pet'r's Br. 27 (internal quotation marks and citation omitted). According to Mr. Schnell, this meant that

> if [I] had a suspense (deadline) to get a report done by 10 August and [he] submitted the report on 5 August, if the supervisor didn't have time to

review and approve the report by 10 Aug, [I] failed, or if the supervisor reviewed the report and returned it to me on 11 Aug with perceived punctuation errors, I failed.

Pet'r's Br. 27.

Mr. Schnell's assertion does not address the Agency's contention that he had an "apparent lack of desire to perform tasks assigned to him [which was] degrading the overall performance of [the] Compliance Branch and delaying the completion of critical actions that need to be taken." Resp't's App. 118. Rather, his argument merely addresses the process employed by the Agency in evaluating whether he was *successful* at completing a particular task.

The issue is whether Mr. Schnell actually carried out the duties assigned to him and necessary for his position. Here, because Mr. Schnell has failed to refute the Agency's contention that he did not carry out his assigned tasks, substantial evidence supports the Board's finding that he was not assigned to a sham position and the Agency complied with the Board's directive in assigning him to the GS-12 Environmental Engineer position.

CONCLUSION

For the foregoing reasons, the Board's decision is

**AFFIRMED**