NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ROBERT JEFF DEMPSEY,**
*Petitioner*

**v.**

**UNITED STATES MARSHALS SERVICE,**
*Respondent*

_____

2022-1665

_____

Petition for review of an arbitrator's decision in No. FMCS 211117-01415 by Melinda G. Gordon.

_____

Decided:  March 5, 2024

_____

ROBERT JEFF DEMPSEY, Brunswick, GA, pro se.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, STEVEN C. HOUGH, PATRICIA M. MCCARTHY.

_____

Before TARANTO, CHEN, and STOLL, *Circuit Judges*.

PER CURIAM.

Robert Jeff Dempsey worked as a Property Management Specialist in the United States Marshals Service (USMS) until USMS, acting under 5 U.S.C. Chapter 43, removed him from that position for unacceptable performance, with the removal effective on September 25, 2020. Mr. Dempsey's union, the American Federation of Government Employees Local 2272 (the Union), filed a grievance on his behalf challenging the removal. Under 5 U.S.C. § 7121(e)(1) and pursuant to the collective bargaining agreement between the Union and USMS, the parties selected an arbitrator, who ultimately affirmed USMS's removal decision. *See* J.A. 1–15. On Mr. Dempsey's petition for review, we affirm the arbitrator's decision.

I

Mr. Dempsey was a Property Management Specialist with the USMS Training Division in Glynco, Georgia, from 2011 until 2020. His duties, according to USMS's and Mr. Dempsey's evidence, included accounting for and keeping inventory of training division property, such as training weapons, and ensuring that the division's motor vehicles received routine and required maintenance.

On December 18, 2019, Mr. Dempsey acknowledged that he was being evaluated under a "performance work plan" (also referred to as a "performance plan") during the period from October 1, 2019, to September 30, 2020. J.A. 671–72. The plan listed "Time Management" as one of the "critical elements" of his position. J.A. 676; *see* J.A. 674–677. On April 30, 2020, Mr. Dempsey met with his direct supervisor, Chief Abra Lattany-Reed, and the then-Deputy Assistant Director of his division, Stephanie Creasy. Ms. Lattany-Reed and Ms. Creasy informed him, and he also received a written notice, that he was being placed on a "performance improvement plan" in accordance with 5 C.F.R. Part 432 for 30 calendar days due to unacceptable performance in the earlier-adopted performance work plan.

He was also informed that he had been denied a scheduled within-grade pay increase due to his poor performance.

The written notice emphasized the "Time Management" critical element from his performance work plan and expressed concern that Mr. Dempsey "continually fail[ed] to manage [his] time in a manner that ensure[d] timely completion of assignments." J.A. 698. The notice provided six examples of Mr. Dempsey's failures to manage his time, J.A. 698–702, and outlined both specific tasks to be completed (*e.g.*, "accomplish a complete review of the Training Division inventory for all division property") and general standards to be met (*e.g.*, "respond to emails and correspondence timely") under the new performance improvement plan, J.A. 702. The notice also advised Mr. Dempsey that if, at the end of the 30-day period, his performance continued to be unacceptable, he could be subject to "reassignment, reduction in grade or removal from the [f]ederal service." J.A. 703.

During the April 30 meeting, Mr. Dempsey and his supervisors agreed that he would make a plan to accomplish the tasks required of him during the performance-improvement period. Mr. Dempsey was advised that the 30-day period of the performance improvement plan would start immediately, *i.e.*, on April 30. The next day, May 1, Mr. Dempsey met with Ms. Lattany-Reed and Ms. Creasy to discuss his work plan for the 30-day period, but Ms. Lattany-Reed and Ms. Creasy found his work plan to be inadequate. Mr. Dempsey then proposed a new plan and began working on his assigned tasks, and he and Ms. Lattany-Reed continued to communicate by email over the performance-improvement period.

On July 21, 2020, Mr. Dempsey received a notice of proposed removal under 5 U.S.C. § 4303 and 5 C.F.R. Part 432 for "[f]ailure of a [p]erformance [i]mprovement [p]lan," which "concluded on June 1." J.A. 719. The notice sets forth five examples of performance deficiencies during the

performance-improvement-plan period.  Mr. Dempsey replied orally on August 31, 2020.  On September 25, 2020, Mr. Dempsey was notified that the deciding official had considered the record and found his "performance deficiencies" with respect to time management had been "substantiated" and that Mr. Dempsey would be removed effective the close of business that day.  J.A. 818.

In accordance with the collective bargaining agreement between the Union and USMS, which provides for grievance procedures as required by 5 U.S.C. § 7121, the Union filed a grievance challenging Mr. Dempsey's removal.  The Union and the USMS jointly selected an arbitrator via the Federal Mediation and Conciliation Service.  The arbitrator held a series of virtual hearings in June through August 2021, hearing testimony from Mr. Dempsey, Ms. Lattany-Reed, Ms. Creasy, the deciding official, and a number of other USMS employees.

The arbitrator issued a decision denying the Union's grievance and affirming Mr. Dempsey's removal, because USMS's removal decision was supported by substantial evidence, as required by 5 U.S.C. §§ 7121(e) and 7701(c)(1)(A) and 5 C.F.R. § 1201.56(b)(1)(i).  In particular, the arbitrator determined that substantial evidence existed of Mr. Dempsey's poor performance before the performance-improvement period, USMS's notice to him of his performance issues, USMS's provision of a reasonable opportunity to improve, and Mr. Dempsey's continued poor performance.  She also noted that, although USMS made an error in its proposed removal letter, by giving "May 20" as the day of a meeting, Mr. Dempsey "was not harmed by this error."  J.A. 10–11.

The arbitrator's decision issued on February 14, 2022.  On April 8, 2022, within the 60 days allowed by 5 U.S.C. §§ 7121(f) and 7703(b)(1), the Union and Mr. Dempsey petitioned this court for review of the arbitrator's decision.  The parties then stipulated to the dismissal of the Union

as a party, *see* Fed. R. App. P. 27, leaving Mr. Dempsey the sole petitioner. We have jurisdiction under 5 U.S.C. §§ 7121(f) and 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

II

When presented with an arbitral decision arising from a grievance procedure established under 5 U.S.C. § 7121 for a collective bargaining agreement, we review it "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection Board]." 5 U.S.C. § 7121(f); *see AFGE Local 3599 v. Equal Employment Opportunity Commission*, 920 F.3d 794, 796–797 (Fed. Cir. 2019); *Dixon v. Department of Transportation, Federal Aviation Administration*, 8 F.3d 798, 803 (Fed. Cir. 1993). Consequently, we will affirm the arbitrator's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Dixon*, 8 F.3d at 803. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Personnel Management*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (cleaned up). "This court's role is further circumscribed when reviewing a performance-based action taken under chapter 43 because of the deference owed to each agency's judgment regarding its employees' performance in light of the agency's assessment of its own personnel needs and standards." *Harris v. Securities and Exchange Commission*, 972 F.3d 1307, 1315 (Fed. Cir. 2020) (cleaned up).

Chapter 43 authorizes the reduction in grade or removal of an employee for "unacceptable performance." 5 U.S.C. § 4303(a).

> In order to properly remove or demote an employee under chapter 43, the agency must have (1) established a performance appraisal system approved by

the Office of Personnel Management, (2) communicated objective and reasonable written performance standards and critical elements of an employee's position to her at the beginning of the appraisal period, (3) warned her of inadequacies in critical elements during the appraisal period, and (4) counseled and afforded her an opportunity for improvement after proper notice.

*Harris*, 972 F.3d at 1316; *see Lovshin v. Department of the Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985) (en banc).

An agency that has complied with the performance-appraisal requirements may "reduce in grade or remove an employee who receives a rating of 'unacceptable' *with respect to even a single* critical element." *Harris*, 972 F.3d at 1316 (emphasis in original) (cleaned up); *see* 5 U.S.C. § 4301(3) (For purposes of chapter 43, subchapter I, under which this § 4303 removal falls, "'unacceptable performance' means performance of an employee which fails to meet established performance standards in one or more critical elements of such employee's position."). The implementing regulations that govern chapter 43 removals define a "critical element" as "a work assignment or responsibility of such importance that unacceptable performance on the element would result in a determination that an employee's overall performance is unacceptable." 5 C.F.R. § 430.203.

Mr. Dempsey broadly argues that the arbitrator did not take due account of favorable evidence when she found the agency's removal decision to be supported by substantial evidence. Mr. Dempsey does not challenge USMS's "establish[ment of] a performance appraisal system" or its communication of "objective and reasonable written performance standards and critical elements." *Harris*, 972 F.3d at 1316; *see* Petitioner's Br. at 59 (stating that "two" of the "four elements" required for a chapter 43 removal are "pertinent here," and then referring to "warning" and

"opportunity for improvement").    Mr. Dempsey's argu-
ments address the remaining three pieces of the chapter 43
inquiry: whether he was "warned of [his] inadequacies,"
whether he was "counseled and afforded . . . an opportunity
for improvement," and whether his performance was in fact
unacceptable with respect to a critical element. *Harris*,
972 F.3d at 1316.

## A

Mr. Dempsey suggests that the arbitrator erred in find-
ing that he was reasonably warned of his deficiencies,
pointing to the fact that he did not receive a specific warn-
ing that he was "in danger of failing" during the course of
the performance-improvement period. Petitioner's Br. at
10 (emphasis omitted).  But we have stated that, for chap-
ter 43 removals, no warning needs to be issued prior to a
performance improvement plan, because the plan "notice
itself often serves as the warning," and there is no require-
ment "that the warning come at any particular time." *Har-
ris*, 972 F.3d at 1316–17.  Mr. Dempsey cites no authority
suggesting that he was entitled to any additional warning
*after* the notice of the performance improvement plan for
the purposes of chapter 43.  And he does not dispute that
he received the performance-improvement-plan notice.
Consequently, the arbitrator's decision regarding USMS's
warning is supported by substantial evidence.

## B

Mr. Dempsey points to evidence that he argues weighs
against the arbitrator's determination that he was coun-
seled and afforded the opportunity to improve.  First, he
points to evidence that his workload during the perfor-
mance-improvement period was too great for one person to
manage.  He also asserts that his 30-day performance-im-
provement period was too short and that he received new
tasks and deadlines days into the period.  Finally, he as-
serts that he did not receive enough support during the

performance-improvement period.  These arguments, we conclude, do not support disturbing the arbitrator's ruling.

Mr. Dempsey first argues that the arbitrator ignored evidence that his workload was unreasonable, including testimony by others about the size of his workload and evidence that, for completion of one of the tasks he was assigned, *i.e.*, taking an inventory of all division property, 45 days would ordinarily be allowed.  But Ms. Lattany-Reed and Ms. Creasy both testified—and the arbitrator noted—that Mr. Dempsey would have been given more time to complete the tasks if he had asked for it and that they communicated such flexibility to Mr. Dempsey.  And Mr. Dempsey's performance-improvement-plan notice required that he provide notice if he would miss a deadline.  Yet, as the arbitrator found, Mr. Dempsey never expressed concern about the shortness of the performance-improvement period, asked for more time, advised that he would miss a deadline, or communicated about other obstacles.[1]  However large his list of assigned tasks was, Mr. Dempsey does not seem to dispute that he could have communicated his concerns to his supervisors but never did.  Evidence of the size of his workload does not overcome this fact.

Mr. Dempsey also argues that his performance-improvement period was in effect only 28 days, rather than the 30 to which he was entitled under the notice.

---

[1]    In challenging the finding that his performance was unacceptable, Mr. Dempsey argues that an email received from Ms. Lattany-Reed on May 11, 2020, meant that he no longer had to request more time if he was going to miss a deadline.  This argument does not on its face suggest that Mr. Dempsey believed that he did not have to (and should not) communicate any concerns about the deadline or workload to his supervisors, and such a suggestion would be an unpersuasive reading of the language of Ms. Lattany-Reed's email.

Specifically, he argues that he was missing two days because he received notice of the performance improvement plan in the afternoon and the period contained a federal holiday. Mr. Dempsey does not, however, cite to authority indicating that federal holidays are to be excluded from a performance-improvement period, which would be surprising when weekends are counted, as Mr. Dempsey accepts in putting forth his 28-day alternative. Further, his performance-improvement-plan notice expressly specified that the period would last "30 calendar days." J.A. 697. And, as USMS further notes, Mr. Dempsey's performance-improvement period ended up lasting until June 1, 2020. Respondent's Br. at 22 n.5 (citing J.A. 719). Thus, even not counting April 30 or June 1, Mr. Dempsey was afforded the 31 calendar days of May.

Mr. Dempsey also asserts that, part way through the period, via an email on May 11, he was given new deadlines and tasks, which he had even less time to complete. The arbitrator reasonably found, however, based on testimony from Mr. Dempsey and Ms. Creasy, that the additional tasks and deadlines Mr. Dempsey alleges he received had previously been communicated to him. Mr. Dempsey conceded, for example, that the tasks and items identified in the May 11 email had been discussed at the May 1 meeting, though no specific deadlines had been provided. And, as discussed above, to the extent that Mr. Dempsey was concerned about newly set deadlines before the end of his performance-improvement period, the record is clear that he could have raised his concerns with his supervisors.

Finally, Mr. Dempsey argues that Ms. Lattany-Reed did not meet or communicate with him regularly during the performance-improvement period and did not express her dissatisfaction with his work, and therefore did not counsel him as required. The arbitrator found that, despite Mr. Dempsey's testimony about a lack of support, USMS "credibly demonstrated it assisted Dempsey" through, among other things, the testimony of Ms. Lattany-Reed. J.A. 14.

Mr. Dempsey's argument thus asks us to review the arbitrator's determinations about credibility of, and how to weigh, different testimony, something beyond our limited standard of review. *See, e.g.*, *Raney v. Federal Bureau of Prisons*, 222 F.3d 927, 939 (Fed. Cir. 2000) (en banc) ("Credibility determinations are within the discretion of the arbitrator and are virtually unreviewable on appeal.").

Overall, substantial evidence supports the arbitrator's conclusion that Mr. Dempsey was counseled and given an opportunity to improve before he was removed.

C

Mr. Dempsey challenges aspects of the examples of unacceptable performance specified in his notice of proposed removal. To the extent that the notice gives these examples as specifications of failure to complete certain tasks, he asserts that he did in fact complete those tasks. These arguments, too, are unpersuasive.

Example 1A of the notice of proposed removal notes that Mr. Dempsey failed to complete scheduled maintenance on several vans by the deadline of May 12, even though he had previously represented that the repairs in question had already been scheduled and would be completed by the deadline. J.A. 720. Mr. Dempsey does not seem to contest that at least certain repairs were not completed by May 12.[2] Instead, Mr. Dempsey argues that he completed the overall task because the repairs listed in the notice, such as a broken seatbelt, were "repairs" and not "scheduled maintenance." Petitioner's Br. at 22–24. Mr. Dempsey also testified as to his belief that repairs were

---

[2]    USMS conceded that some vehicle work listed in the notice of proposed removal was completed on time, but the arbitrator found substantial evidence that two items of work were not completed on time. J.A. 11 & n.71. Mr. Dempsey appears not to dispute that finding.

distinct from maintenance.  The arbitrator, however, noted that USMS policy "clearly contemplate[d] repair work on a vehicle as part of maintenance.  J.A. 11 (citing J.A. 1120). Mr. Dempsey does not argue or suggest that any misconception on his part was based on communication from his supervisors or that he could not have sought clarification.

Mr. Dempsey essentially asks us to reweigh his testimony and credit it over the arbitrator's findings.  We again decline to do so.  *See Raney*, 222 F.3d at 939.  And Mr. Dempsey's arguments against the other examples similarly ask us to reweigh and reconsider his testimony regarding his understanding, which diverged from that of his supervisors, of the tasks before him.  Thus, these arguments are equally unavailing.

Mr. Dempsey also argues that, based on Ms. Lattany-Reed's email on May 11 (*see supra* n.1), he no longer needed to provide advance notice that he would miss a deadline. He argues that the examples in the notice of proposed removal all depended on his not having provided such notice. Aside from the fact that the email could reasonably be subject to an interpretation different from Mr. Dempsey's, the examples in the proposed removal notice consistently note that Mr. Dempsey *both* failed to provide notice *and* failed to meet the deadlines.  Thus, his failure to provide notice, even if in good faith based on Ms. Lattany-Reed's email, was not the sole basis for USMS's finding of unacceptable performance.

Finally, Mr. Dempsey argues that his errors during the performance-improvement period should have been balanced against his accomplishments.  He cites no authority, however, that supports such a balancing of errors against accomplishments.

Ultimately, there was ample record evidence that Mr. Dempsey failed to meet standards that were clearly set forth for him.  We find that the arbitrator's decision on the

unacceptable-performance issue to be supported by substantial evidence.

## III

We have considered Mr. Dempsey's other arguments and find them unpersuasive. For the reasons stated above, substantial evidence supports the arbitrator's affirmance of USMS's removal of Mr. Dempsey. We affirm.

The parties shall bear their own costs.

**AFFIRMED**