# United States Court of Appeals for the Federal Circuit

---

**THOMAS G. WROCKLAGE,**
*Petitioner,*

**v.**

**DEPARTMENT OF HOMELAND SECURITY,**
*Respondent.*

---

2013-3159

---

Petition for review of the Merit Systems Protection Board in No. CH0752110752-I-1.

---

Decided: October 21, 2014

---

CHRISTOPHER R. LANDRIGAN, The Brownell Law Firm, PC, of Washington, DC, argued for petitioner. With him on the brief were BONNIE J. BROWNELL and D. ROBERT DEPRIEST.

L. MISHA PREHEIM, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were STUART F. DELERY, Assistant Attorney General, ROBERT E. KIRSCHMAN, JR., Director, and MARTIN F. HOCKEY, Assistant Director.

---

Before MOORE, REYNA, and TARANTO, *Circuit Judges.*

MOORE, *Circuit Judge*.

Thomas G. Wrocklage appeals from the final decision of the Merit Systems Protection Board (Board) which sustained the Department of Homeland Security's (Agency's) removal of Mr. Wrocklage from his position as Customs and Border Protection (CBP) Officer. *Wrocklage v. Dep't of Homeland Sec.*, No. CH-0752-11-0752-I-1 (M.S.P.B. June 12, 2013) (*Final Decision*). Because the Board's decision is not supported by substantial evidence and is not in accordance with law, we *vacate* and *remand*.

BACKGROUND

Mr. Wrocklage served as a CBP Officer for twelve years. On September 28, 2009, Mr. Wrocklage was working as a Primary Officer in charge of screening travelers entering the United States through the Port of Sault Sainte Marie, Michigan. Mr. Wrocklage was the first CBP Officer to screen an elderly couple, the Millers, who declared that they were carrying "fruits and vegetables" during primary CBP inspection. However, at a secondary inspection point, CBP Officer Hendricks issued a $300 fine to the Millers for failing to declare lemons and seeds. Mr. Wrocklage and at least one additional officer, Officer LaLonde, contacted their supervisor, Officer Price, about the propriety of the fine.

That same night, Mr. Wrocklage took home a copy of the Treasury Enforcement Communication System (TECS) report reflecting the fine issued to the Millers. The TECS report included Mr. Miller's social security number, date of birth, address, and license plate number. In an email to the Joint Intake Center associated with the CBP, Mr. Wrocklage reported the details of the day's events and stated that he believed the Millers were innocent and had been wrongly charged. Mr. Wrocklage attached the TECS report to his email. He carbon copied

Amy Berglund, an employee in Senator Carl Levin's office, on his email complaint. Within hours of sending the email, Mr. Wrocklage realized that the TECS report had been attached to the email which he copied to Ms. Berglund. He immediately contacted her, and in response to his request, Ms. Berglund deleted Mr. Wrocklage's emails before opening and reading the attached TECS report. Mr. Wrocklage also immediately self-reported to the Agency his transmission of the TECS report to Ms. Berglund that same night, explaining that he had inadvertently sent the TECS report to Ms. Berglund in his haste to expeditiously forward the TECS report to the Joint Intake Center.

The CBP instituted an investigation into Mr. Wrocklage's transmission of the TECS report to Ms. Berglund which ultimately resulted in his removal from his position as a CBP Officer. The Agency determined that the copy of the TECS report sent to Ms. Berglund had been printed by Officer LaLonde. Confronted with this information, Mr. Wrocklage told the agency that he "d[id] not recall" where he obtained the TECS report. Both Mr. Wrocklage and Officer LaLonde explained that on September 28, they both printed off copies of the TECS report and jointly presented the copies to their supervisor, Officer Price. They explained that it was possible that the copies were switched in the process, and it was possible that Officer Price returned Officer LaLonde's copy to Mr. Wrocklage, and vice versa. Mr. Wrocklage also repeatedly told the Agency that he mistakenly sent the TECS report to Ms. Berglund. He explained that, after he drafted the email, he spoke with a representative at the Joint Intake Center who told him to include the TECS report as an attachment to the email. In a hurry to send the email, he forgot that he had already carbon copied Ms. Berglund on the email.

The Agency removed Mr. Wrocklage from his CBP position for (1) improper possession of TECS information

(Charge 1), (2) unauthorized disclosures of TECS information (Charge 2), and (3) lack of candor during the investigation (Charge 3). The Board affirmed.

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We must affirm the Board's decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004). We review questions of law de novo. *Welshans v. U.S. Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008).

## I. Improper Possession of TECS Information (Charge 1)

Charge 1 alleged that Mr. Wrocklage took a copy of the TECS report from his duty station to his home without authorization. The charge specified that the TECS report contained Mr. Miller's personally identifiable information. Neither the Administrative Judge (AJ) nor the Board made any factual findings concerning whether Mr. Wrocklage intentionally removed the TECS report. Mr. Wrocklage admits that he took the TECS report home and does not dispute Charge 1 on appeal.

## II. Unauthorized Disclosure (Charge 2)

### 1. *Stipulation to Charge 2*

Charge 2 alleged that Mr. Wrocklage copied Ms. Berglund on an email having the TECS report as an attachment. It noted that the TECS report contained Mr. Miller's protected personal information and stated that

Mr. Wrocklage was "not authorized to disclose this information to Ms. Berglund." During an oral reply to the Agency regarding the proposed removal, Mr. Wrocklage's Union representative stated that "the Union does not dispute that the Agency will likely be able to prove the charges of improper possession of TECs information and unauthorized disclosure of TECs information." J.A. 45. The deciding official at the Agency found that "there is no factual dispute regarding either charge 1 or charge 2." J.A. 56. Mr. Wrocklage appealed his removal to the Board. The AJ sustained Charge 2 indicating that the parties had "stipulated to the factual accuracy of this charge." J.A. 119. As the Board explained, Mr. Wrocklage argued that "the administrative judge erroneously treated his stipulation to the underlying facts regarding his disclosure as a stipulation to the legal conclusion that his actions were unauthorized." J.A. 9. The Board nonetheless found that when Mr. Wrocklage "stipulated to the factual circumstances as stated in charges one and two," the charges could be sustained. J.A. 9. We do not agree.

As an initial matter, neither the statute nor the regulations governing appeals to the Board limit the defenses that an employee can raise to only those raised before the Agency. Thus, Mr. Wrocklage is free to argue his interpretation of "disclosure" to the Board regardless of whether he made this argument to the Agency during its determination of what action to take against him. It is not waived when presented for the first time to the Board.

On appeal, the government argues that Mr. Wrocklage conceded Charge 2 and that therefore the agency did not need to demonstrate that any disclosure actually occurred. Resp. Br. 11. The government points to two purported concessions. First, the government relies upon a statement in a status conference with the administrative judge that "the parties stipulated to the factual accuracy of this charge." Resp. Br. at 10. We do not interpret this as a concession that Charge 2 has been

established.  It is correct that parties in a Merit Systems Protection Board proceeding "may stipulate to any matter of fact."  5 C.F.R. § 1201.63.  Mr. Wrocklage stipulated to the facts of Charge 2 – that he sent the email with the TECS report attached.  However, stipulating to the underlying facts does not satisfy the Agency's burden where, as in this case, Mr. Wrocklage was contesting whether those facts gave rise to a violation.  In his Brief in Support of Appellant's Defense filed with the Board, Mr. Wrocklage argued that "TECS information was never disclosed . . . the information in question must be imparted before a disclosure can be complete. . . . Since Ms. Berglund did not view the attachments, the information contained therein was never imparted and there was never the disclosure necessary to trigger the Privacy Act."  J.A. 116.  Stipulating to the facts is not a concession to the charge that the conduct constituted an unauthorized disclosure, which requires a legal analysis.  The Board's finding of "unauthorized disclosure" in this case depends on whether the conduct constituted a disclosure under the Privacy Act, 5 U.S.C. § 552a(b).

The second "concession," according to the government, came during Mr. Wrocklage's deposition when he characterized what his Union representative had said at the oral hearing before the Agency prior to the initiation of the Board appeal.  Resp. Br. at 10.  We agree with Mr. Wrocklage that his deposition testimony is not a concession that his conduct constituted an unauthorized disclosure.  Mr. Wrocklage's testimony was not that he was conceding Charge 2 before the Board, but rather his interpretation of what his Union representative had stated to the Agency before it had even decided to remove him.  This is not a concession which prevents him from disputing Charge 2 in his Board appeal.

## 2. Transmission as a "Disclosure"

The Board also found that on the merits the Agency had proven Charge 2 because Mr. Wrocklage's transmission of the TECS report constituted an unauthorized disclosure. It found that Mr. Wrocklage's transmission of the TECS report to Ms. Berglund constituted a "disclosure" in violation of the Privacy Act despite the fact that Ms. Berglund did not view the TECS report and deleted it from her possession. J.A. 4. The Board defined disclosure as the act of sending, "[T]he disclosure, or violation, occurred when the appellant sent the e-mail message to Bergland [sic]." J.A. 4.

The government argues that the Board correctly found Mr. Wrocklage's transmission of the TECS report to Ms. Berglund constitutes a "disclosure." It argues that a "transfer" of a record containing protected information constitutes a prohibited "disclosure," and that the act of emailing the TECS report is therefore a "disclosure." Resp. Br. 11–12 (citing Office of Management and Budget Circular No. A-108, Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,953 (July 9, 1975) ("A disclosure may be either the transfer of a record or the granting of access to a record.")). It also relies upon 5 C.F.R. § 297.102 defining "disclosure" to mean "providing personal review of a record, or a copy thereof, to someone other than the data subject or the data subject's authorized representative" and argues that the term "providing" means "to make [something] available: to supply." Resp. Br. 12. The government further asserts that concluding that a "disclosure" did not occur in this case would cause a "host of problems." *Id.* at 14. Specifically, it asserts that such a holding would effectively allow transmission of documents containing protected information so long as the recipient only views those portions free of protected information, and would encourage more widespread transmission of documents containing protected information. *Id.*

We do not agree. Mr. Wrocklage's transmission of the TECS report to Ms. Berglund does not constitute a "disclosure" because the undisputed facts of this case are that Ms. Berglund never viewed the TECS report. The Privacy Act does not define the term "disclosure." *See* 5 U.S.C. § 552a(a). However, other courts have interpreted this language in a persuasive manner. In *Luster v. Vilsack*, the Tenth Circuit adopted the definition of disclosure requiring "personal review" by an unauthorized recipient as set forth in 5 C.F.R. § 297.102 to reject a Privacy Act violation claim. 667 F.3d 1089, 1098 (10th Cir. 2011). There, the court concluded that no "disclosure" occurred where a document containing protected information was transmitted to a fax machine but there was no evidence that any unauthorized person actually viewed it. *Id.* Similarly, in *Schmidt v. United States Dep't of Veterans Affairs*, the court defined the term "disclose" as "the placing into the view of another information which was previously unknown" and concluded that there was no Privacy Act violation where there was no evidence that anyone actually viewed the protected information. 218 F.R.D. 619, 630–31 (E.D. Wis. 2003). Most recently, in *In re Science Applications International Corp. Backup Tape Data Theft Litigation*, the court adopted from Privacy Act authorities what is a "common-sense intuition: If no one has viewed your private information (or is about to view it imminently), then your privacy has not been violated." -- F. Supp. 2d --, 2014 WL 1858458, at *9 (D.D.C. May 9, 2014). On that basis, the court denied standing to most of the plaintiffs where a thief had acquired tapes containing protected data but there was no allegation, and it was entirely speculative, that the thief had actually viewed their information. *Id.* We are persuaded that these cases articulate the correct interpretation of disclose or disclosure as requiring not just transmission, but actual view-

ing or imminent viewing by another.[1]  Of course the fact that the record was viewed, like other facts, only needs to be established by a preponderance of the evidence.  This would not seem to require identifying a specific viewer.  It would be enough to show that someone more likely than not viewed the material.  The undisputed facts of this case, however, are that the record went to one person and was not viewed.  It is undisputed that the recipient deleted the email and it is therefore not imminently viewable.

While it is true that Mr. Wrocklage transmitted the TECS report to Ms. Berglund and she received it, it is undisputed that she never viewed it.  There was therefore no "disclosure."[2]  We conclude that Charge 2 is not supported by substantial evidence.

### III.  Lack of Candor (Charge 3)

Charge 3 consisted of two specifications.  The first specification charged that Mr. Wrocklage lacked candor in stating that he copied Ms. Berglund "in error" and that it "was a mistake due to the stress of the situation."  The second specification charged that Mr. Wrocklage failed to

---

[1]    Because there was no viewing of the TECS report at all, this case does not raise the question whether a "record" is "disclosed" under the Privacy Act once part of it is actually viewed.  This case does not present the government's concern about information-specific viewing within a single document.

[2]    Because we reverse the Board's decision with respect to charges 2 and 3, and vacate the penalty of removal, *see infra* pp. 9–13, there is no need at this time to determine whether the emails Mr. Wrocklage sent to Ms. Berglund constitute protected disclosures under the Whistleblower Protection Act, and whether the Agency's removal of Mr. Wrocklage is a prohibited personnel action within the meaning of that Act.

be forthcoming by stating that he did not recall how he obtained the TECS report on the day in question. The AJ sustained the Agency's finding that Mr. Wrocklage lacked candor, holding that preponderant evidence supported specifications 1 and 2. J.A. 119–21. The AJ found that Mr. Wrocklage's contention that he "did not intend to include Ms. Berglund" on the email was "not credible." J.A. 120. The AJ agreed with the Agency investigator that Mr. Wrocklage's transmission of the email to Ms. Berglund "was not in error" because he sent the email to Ms. Berglund's personal attention. *Id.* The AJ also found that Mr. Wrocklage's statement that he could not "recall" where he received the TECS report after the Agency advised him that the TECS report sent to Ms. Berglund was printed from Officer LaLonde's computer was "inherently incredible." J.A. 120–21. The AJ concluded that Mr. Wrocklage's statement that he could not recall how he came into possession of the TECS report lacked credibility because Mr. Wrocklage knew the seriousness of violating the prohibition against removing TECS documents. J.A. 121. The Board affirmed. J.A. 8–9.

We agree with Mr. Wrocklage that substantial evidence does not support the lack of candor charge concerning Mr. Wrocklage's transmission of the TECS report to Ms. Berglund. The AJ's decision finds only that Mr. Wrocklage lacked credibility in alleging that he "did not intend to include Ms. Berglund in the mailing." J.A. 120. But Mr. Wrocklage explained that he had intended to include Ms. Berglund on his email complaint to the Joint Intake Center. He explained that after drafting the email, he spoke with a representative of the Joint Intake Center who instructed him to attach the TECS report to the email, and he realized after he had sent multiple emails containing the TECS information that Ms. Berglund was carbon copied on the email. J.A. 68. Indeed, in an April 15, 2010 sworn statement completed during the Agency's investigation, Mr. Wrocklage explained that

when he discovered Ms. Berglund "was accidentally cc'd on the distribution list *containing CBP sensitive information*" he immediately asked Ms. Berglund to delete the TECS report. J.A. 35 (emphasis added). Lack of candor is a serious charge that carries with it the possibility of severe penalties. *Bloom v. McHugh*, 828 F. Supp. 2d 43, 55 (D.D.C. 2011). Here, the Agency failed to meet its burden of proof and rebut Mr. Wrocklage's explanation of his error. We therefore find that substantial evidence does not support this specification of Charge 3.

The lack of candor specification concerning Mr. Wrocklage's statements about where he received the TECS report is similarly unsupported by substantial evidence. Mr. Wrocklage testified that he had printed out the TECS report himself and taken it to Officer Price to complain about the fine levied against the Millers. J.A. 61–63, 92. Officer LaLonde testified that he had likewise printed out the TECS report and taken it to Officer Price to complain that the fine against the Millers had been unwarranted. J.A. 85.

The statement that Mr. Wrocklage made which the AJ found lacked candor was his response that he could "not recall" whether he had obtained the TECS report from Officer LaLonde. Mr. Wrocklage explained that he said he could not recall because despite having printed out the TECS report himself, Internal Affairs showed him that the copy which he forwarded had in fact been printed by Officer LaLonde. J.A. 61–63, 91–92. As the AJ acknowledged, Mr. LaLonde was equally perplexed at how Mr. Wrocklage had the TECS printout that had originated from his computer. J.A. 120. After being presented with this evidence Mr. LaLonde likewise testified that he could not "recall" how this happened. Both men were justifiably confused and presented consistent, unrebutted testimony. Later both men testified that they had each given their TECS reports to Officer Price and that it is possible when Officer Price returned the reports to them

they were mixed up.  J.A. 85, J.A. 92.  In light of these facts, the Agency's conclusion that Mr. Wrocklage lacked candor when he stated that he did not recall whether the report he submitted had originated from Officer LaLonde lacks substantial evidence support.  We therefore reverse the Board's decision sustaining the finding of lack of candor.

## IV.  Penalty of Removal

We reverse all of the charges against Mr. Wrocklage except Charge 1:  Improper Possession of TECS Information.  In light of the significant change in number and seriousness of sustained charges, we vacate the penalty of removal and remand for reconsideration of the appropriate penalty.  *See Guise v. Dep't of Justice*, 330 F.3d 1376, 1381 (Fed. Cir. 2003).  We disagree with the government that the penalty of removal can be sustained on Charge 1 alone based on the record in this case.  Neither the AJ nor the Board made any findings concerning removal on the basis of that charge alone.  In fact, the evidence shows that the standard penalty for a first offense of this nature is "written reprimand to 14-day suspension."  Moreover, there were no factual findings concerning whether Mr. Wrocklage intentionally took the TECS report home, which is a proper consideration in a *Douglas* Factors analysis.  *See Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–06 (1981).  Finally, Mr. Wrocklage's immediate self-reporting of his conduct and the fact that no one saw the information contained in the TECS report are factors that significantly reduce the seriousness of the violation and militate in favor of a lesser penalty.  *See id.*

## Conclusion

Because the charges of unauthorized disclosure and lack of candor are not supported by substantial evidence, we *vacate* and *remand* for a determination of the appropriate penalty on the basis of the sole remaining charge: improper possession of TECS information.

## VACATED AND REMANDED

Costs to Appellant.