NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**FRANK LICARI,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2017-1470

---

Petition for review of an arbitrator's decision in No. FMCS 16-55055A by Laurence M. Evans.

---

Decided: August 11, 2017

---

FRANK LICARI, Burke, VA, pro se.

MARGARET JANTZEN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., ELIZABETH M. HOSFORD; CHARLES EDWARD LOHMEYER, Department of Transportation, Washington, DC.

---

Before LOURIE, REYNA, and HUGHES, *Circuit Judges.*

PER CURIAM.

Frank Licari appeals from an arbitration decision affirming his dismissal from federal employment. Because substantial evidence supports the arbitrator's decision, we affirm.

BACKGROUND

1. Mr. Licari's Removal

Mr. Licari worked for the United States Department of Transportation ("agency") from 2004 until his removal in March 2016. At the time of his removal, Mr. Licari was a senior transportation analyst for a division of the agency responsible for reviewing and approving oil spill response plans.

During his tenure at the agency, Mr. Licari was subject to annual performance appraisals. A July 2015 appraisal of Mr. Licari's 2014–2015 performance resulted in an "unacceptable" rating in three job elements. *See* S.A. 93, 95–96. The only job element relevant to this appeal is Critical Element 4, which states that employees must "perform[] reviews of onshore pipeline oil spill response plans . . . [and] accurately follow[] review guidelines 85% of the time." S.A. 19, 96. Each response plan required Mr. Licari to review oil operators' answers to 38 questions. Mr. Licari accurately reviewed several of the 38 questions less than 85% of the time. For example, he correctly reviewed Question 16 only 33% of the time. S.A. 20.[1]

In September 2015, the agency placed Mr. Licari on a Performance Improvement Plan ("PIP") and issued a

---

[1]    The arbitrator set aside the agency's determination that Mr. Licari's performance as to Critical Element 3 was unacceptable. S.A. 18. That decision is not before us on appeal.

memorandum explaining how he needed to improve his performance. S.A. 101–05. The memorandum allowed Mr. Licari 90 days "to demonstrate acceptable performance," assigned him a mentor, and set regular check-in meetings. S.A. 104. The memorandum further specified that Mr. Licari would meet biweekly with his supervisor, David Lehman, to discuss his progress. *Id.*

At the conclusion of the 90-day period, the agency notified Mr. Licari that he failed to improve to an acceptable level of performance. S.A. 106. Based on his failure to improve, the agency sent Mr. Licari a Notice of Proposed Removal in January 2016. Mr. Licari, represented by his union, challenged the Notice of Proposed Removal and filed a Step 3 Grievance. The agency issued its decision to remove Mr. Licari and denied Mr. Licari's Step 3 Grievance. The agency noted that if Mr. Licari was unsatisfied, he could proceed to arbitration through his union. S.A. 182.

## 2. Arbitration

Mr. Licari elected to pursue arbitration. In August 2016, the arbitrator heard the testimony of six witnesses and received 21 exhibits. After post-trial briefing, the arbitrator rendered a decision that substantial evidence supported the agency's finding that Mr. Licari performed unacceptably as to Critical Element 4 and that just cause existed for Mr. Licari's removal. The arbitrator summarized the requirements for acceptable performance of Critical Element 4, including the accurate review of 38 questions. The agency provided unrebutted testimony that Question 16 was the most significant. The arbitrator found Mr. Licari's failure rate of 67% on Question 16 to be "startling." S.A. 20. He also noted that Mr. Licari accurately answered several other questions below the 85% threshold.

The arbitrator made credibility determinations about Mr. Lehman's testimony, stating that he had "no basis to

question Supervisor Lehman's credibility or good faith" in determining that Mr. Licari failed Critical Element 4. *Id.* "As between the testimony of Supervisor Lehman and the Grievant," the arbitrator wrote, "I find Lehman's testimony to be more reliable, accurate and trustworthy, and I therefore credit his version of events with regard to Critical Element 4 and its related performance standard." S.A. 21. The arbitrator noted that Mr. Licari "had to recant certain testimony due to 'confusion' and start over," and that Mr. Licari provided no witness testimony to "undermine Lehman's testimony in any respect." *Id.* Based on these findings, the arbitrator concluded that "the Agency, by 'substantial evidence,' has proven that the Grievant's work performance, during the term of his PIP, was unacceptable under Critical Element 4 and its related performance standard." S.A. 22.

Mr. Licari appeals. We have jurisdiction pursuant to 5 U.S.C. §§ 7121(f) and 7703.

## DISCUSSION

We review an appeal from an arbitration decision using the same standards as an appeal from a decision of the Merit Systems Protection Board. 5 U.S.C. § 7121(f); *Norris v. SEC*, 675 F.3d 1349, 1352–53 (Fed. Cir. 2012). By statute, we may set aside an arbitration decision only if it is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law; obtained in violation of law, rule, or regulation; or unsupported by substantial evidence. 5 U.S.C. § 7703(c). We review questions of law de novo and questions of fact for substantial evidence. *See Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1366 (Fed. Cir. 2014). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Office of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004). Credibility determinations, however, are "virtually unreviewable" and are almost never overturned absent con-

tradictory extrinsic evidence. *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). The burden of proving reversible error rests on Mr. Licari. *See Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007).

Mr. Licari appears to raise four primary arguments on appeal. First, he contends that the arbitrator erred in determining that Mr. Lehman was more credible than Mr. Licari. The Board (or in this case, the arbitrator) resolves credibility disputes by (1) identifying the disputed facts; (2) summarizing the evidence; (3) identifying which version he believes; and (4) explaining why one version was more credible than the other. *Hillen v. Dep't of the Army*, 35 M.S.P.R. 453, 458 (1987). The arbitrator acknowledged his obligation to follow *Hillen*, S.A. 21 n.17, and we find no error in the arbitrator's credibility determination. The arbitrator first identified Critical Element 4 as the issue in dispute. He also summarized both sides' evidence, stated that he believed Mr. Lehman's version to be more credible, and explained why. For example, the arbitrator noted that no witnesses contradicted Mr. Lehman "in any respect," and that Mr. Licari had to recant some of his testimony. S.A. 21. In light of the proper application of *Hillen* and the lack of contrary extrinsic evidence, we have no difficulty upholding the arbitrator's determination that Mr. Lehman's testimony was credible. *Hambsch*, 796 F.2d at 436.

Second, Mr. Licari alleges that the agency applied an incorrect, retroactive methodology to determine that he failed to adequately perform Critical Element 4. Critical Element 4 requires employees to review answers to 38 regulatory questions with 85% accuracy. Mr. Lehman testified that prior to his becoming director in 2013, an employee could consistently miss the same question but still satisfy the 85% benchmark by correctly reviewing other questions. S.A. 201. Because each question represented a regulatory requirement, Mr. Lehman was con-

cerned that employees could consistently review individual questions inaccurately. He therefore began requiring *each* question to be reviewed correctly 85% of the time. S.A. 19, 201–02. Mr. Lehman testified that he explained the new review methodology to his employees at two staff meetings. S.A. 202. He also testified that he coached his employees on the methodology during the "communication timeframe," which was the beginning of the upcoming appraisal period. S.A. 210, 234. Mr. Licari confirmed that he spoke with Mr. Lehman about the changes. S.A. 226, 234.

We do not agree with Mr. Licari that the review methodology was flawed. A Senate Report notes that agencies have "'great flexibility'" in choosing and developing their own review systems. *Gillebeau v. Dep't of the Navy*, 362 F.3d 1329, 1336 (Fed. Cir. 2004) (quoting S. Rep. No. 95-969, at 42, *reprinted in* 1978 U.S.C.C.A.N. at 2764). We have previously concluded that Congress "intend[ed] to permit government agencies latitude in crafting performance appraisal systems to fit their needs." *Id.* at 1337. The arbitrator explained that the agency's oil spill response plans were so significant that the 85% accuracy threshold was not "unduly strict." S.A. 19 n.13. Given the potential environmental and economic effects of oil spills, we agree. Mr. Licari presents no other persuasive arguments against the merits of the appraisal criteria.

We also reject Mr. Licari's argument that the appraisal criteria were retroactively applied to him. When the change went into effect, Mr. Licari notified Mr. Lehman that he disagreed with "the whole plan," S.A. 234, and signed the July 31, 2014 performance plan "in disagreement," S.A. 92. The fact that Mr. Licari documented his disagreement in July 2014—a full year before his July 2015 performance appraisal—indicates that the new standards were not applied retroactively. We discern nothing from the record that Mr. Licari was unaware of

how he would be evaluated for the 2014–2015 appraisal period. We conclude the methodology was not retroactively applied.

Third, Mr. Licari faults the arbitrator for not considering what he calls prior "exceptional performance appraisals." The record indicates, however, that the arbitrator received Mr. Licari's past performance appraisals dating back to 2009. S.A. 224. The arbitrator acknowledged the union's position that Mr. Licari "was an 'outstanding performer' until he came under the supervision of David Lehman in late 2013." S.A. 11. But an agency cannot decide to remove an employee based on unacceptable performance that occurred more than a year before the notice of proposed removal. 5 U.S.C. § 4304(c)(2). We note that § 4303(c)(2) does not prohibit the arbitrator from considering past acceptable performance. Given the prohibition on considering unacceptable performance more than one year old, however, we do not fault the arbitrator for not focusing on acceptable conduct prior to 2014. We see no requirement, statutory or otherwise, that an arbitrator must consider acceptable performance that occurred more than one year before the notice of proposed removal. And at any rate, the arbitrator had before him records of Mr. Licari's past acceptable behavior for the past several years.

Fourth, Mr. Licari alleges that the arbitrator was biased against him. Specifically, he argues that both parties made the arbitrator aware of a medical condition that could cause Mr. Licari to interrupt the proceeding, but that the arbitrator "incorrectly interpreted [his] medical problems, as being a difficult witness that was uncooperative." Informal Br. at 9. Mr. Licari also alleges that certain passages of the arbitration decision exemplify the arbitrator's bias.

The government disagrees, citing *Bieber v. Department of the Army*, 287 F.3d 1358 (Fed. Cir.

2002). In *Bieber*, the appellant did not file a motion for recusal with the administrative judge ("AJ"). *Id.* at 1361. Instead, like here, the appellant complained of bias for the first time on appeal. *Id.* We explained that in applying the federal judicial recusal statute, 28 U.S.C. § 455, the Supreme Court requires a showing of "'deep-seated . . . antagonism' toward a party." *Id.* at 1362 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Though the appellant in *Bieber* sought a new hearing instead of recusal, we applied the recusal standard from *Liteky*. *Id.* Based on that standard, we determined that although some of the AJ's comments were inappropriate, they did not to rise to the level of due process-depriving bias. *Id.* at 1362. In a subsequent case, an appellant alleged bias because an administrative judge told her to either settle her case or face dismissal. *Atanus v. MSPB*, 434 F.3d 1324, 1327 (Fed. Cir. 2006). Even accepting the appellant's version of the facts, we found that such a statement "does not establish that the judge had a 'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* (quoting *Bieber*, 287 F.3d at 1362).

We find that the arbitrator's conduct does not demonstrate a deep-seated antagonism against Mr. Licari, and thus did not deprive him of due process. Mr. Licari makes only generalized allegations about the arbitrator's conduct during the trial but does not cite to specific statements that demonstrate bias. He also points to two passages in the arbitration decision: "I have no basis to question Supervisor Lehman's credibility or good faith" and "No one came forward to undermine Lehman's testimony in any respect." S.A. 20–21. While Mr. Licari may disagree with the arbitrator's credibility determinations, they do not show any, let alone deep-seated, antagonism toward Mr. Licari. An adverse credibility determination is not equivalent to improper bias.

CONCLUSION

We have considered the remainder of Mr. Licari's arguments and find them to be unpersuasive. Substantial evidence supports the arbitrator's decision to uphold Mr. Licari's removal based on Critical Element 4. We therefore affirm the arbitration decision.

**AFFIRMED**

COSTS

No costs.