NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NICK FELICIANO,**
*Petitioner*

**v.**

**DEPARTMENT OF TRANSPORTATION,**
*Respondent*

---

2022-1219

---

Petition for review of the Merit Systems Protection Board in No. AT-4324-18-0287-I-4.

---

Decided:  May 15, 2023

---

BRIAN J. LAWLER, Pilot Law, PC, San Diego, CA, argued for petitioner.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY.

---

Before LOURIE, HUGHES, and STARK, *Circuit Judges*.

HUGHES, *Circuit Judge*.

Nick Feliciano appeals the final decision of the Merit Systems Protection Board denying his request for differential pay for his military service in the United States Coast Guard. We have previously held in *Adams v. Department of Homeland Security*, 3 F.4th 1375 (Fed. Cir. 2021) and *Nordby v. Social Security Administration*, No. 21-2280 (Fed. Cir. May 11, 2023) that the entitlement to differential pay under 5 U.S.C. § 5538(a) and 10 U.S.C. § 101(a)(13)(B) requires the employee to serve in a contingency operation. Because those cases control the outcome here, we affirm.

I

Mr. Feliciano worked as an air traffic controller for the Federal Aviation Administration. He also served as a reserve officer in the United States Coast Guard. From July to September 2012, he performed active duty under 10 U.S.C. § 12302 to support a Department of Defense contingency operation. During this period, he received differential pay to make up the difference between his military and civilian compensation. His active duty was later extended to July 2013, but he did not receive differential pay for the extended period.

Under a new series of orders in effect from July 2013 to September 2014 and issued pursuant to 10 U.S.C. § 12301(d), he was activated again to perform military duty in the Coast Guard to support various operations—"Operation Iraqi Freedom, Operation Enduring Freedom, etc." After the orders expired, Mr. Feliciano was retained under 10 U.S.C. § 12301(h) to receive medical treatment until February 2017. He did not receive differential pay for his military service between July 2013 and September 2014.

In 2018, he filed an appeal to the Board alleging that he was subject to a hostile work environment due to his military service. He later amended his hostile work environment appeal to include allegations related to the FAA's

refusal to provide differential pay pursuant to 5 U.S.C. § 5538. While his appeal was pending, we held in *Adams* that for an employee to be entitled to differential pay under § 5538, the employee "must have served pursuant to a call to active duty that meets the statutory definition of contingency operation." 3 F.4th at 1378. Shortly after *Adams* issued, the Board, citing *Adams*, denied his request for differential pay. J.A. 58–60. The Board found that he failed to present any evidence that he was "directly involved" in a contingency operation. J.A. 58. Accordingly, the Board held that Mr. Feliciano's military service did not meet the statutory definition of contingency operation and denied his request for differential pay under § 5538.

Mr. Feliciano now appeals.

## II

We set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Legal conclusions by the Board are reviewed de novo. *Wrocklage v. Dep't of Homeland Sec.*, 769 F.3d 1363, 1366 (Fed. Cir. 2014).

## III

Mr. Feliciano concedes that our holding in *Adams* affects the outcome of this case. Pet. Br. vii, 6–7. He dedicates most of his argument to challenging *Adams* and does not purport to show how his activation under 10 U.S.C. § 12301(d) qualifies as a contingency operation and thus warrants a different outcome from that of *Adams*. *See* Pet. Br. 10–13, 14–26.

As we explained in *Nordby*, we are bound by *Adams*. To receive differential pay, an employee "must have served pursuant to a call to active duty that meets the statutory definition of contingency operation." *Adams*, 3 F.4th at

1378; *Nordby*, No. 21-2280. slip op. at 4. And for voluntary activation under 10 U.S.C. § 12301(d) to qualify as a contingency operation, "there must be a connection between the voluntary military service and the declared national emergency." *Nordby*, No. 21-2280. slip op. at 5. Mr. Feliciano has not alleged any connection between his service and the ongoing national emergency, and thus fails to demonstrate that his voluntary, active service under 10 U.S.C. § 12301(d) met the statutory definition of a contingency operation. For the same reasons as in *Adams* and *Nordby*, we conclude that Mr. Feliciano's service does not qualify as an active duty contingency operation, and that the Board properly denied differential pay.

IV

Mr. Feliciano next argues that he was prejudiced by the Board's one-year delay in issuing its decision after the proceedings. The hearing for the appeal was held on July 30 and 31, 2020, and the record was closed on September 14, 2020. The initial decision was not issued until September 1, 2021, about a year later. During this one-year interim period, we decided *Adams* in July 2021.

The Board's decision largely relied on its finding that Mr. Feliciano "failed to present any evidence that he was called to directly serve in a contingency operation." J.A. 58. He argues that he could not have presented the evidence, because such evidence was not necessary pre-*Adams*. He views *Adams* as adding a *new* requirement that employees serve in a contingency operation to receive differential pay. We disagree. As we stated in *Adams* and again in *Nordby*, even if the term "contingency operation" does not appear on the face of § 5538, it is incorporated by reference. Section 5538 requires a finding of active duty pursuant to "a provision of law referred to in section 101(a)(13)(B) of title 10," and § 101(a)(13), in turn, defines the term "contingency operation." 10 U.S.C. § 101(a)(13) ("The term 'contingency operation' means a military operation that . . . . ");

*Adams*, 3 F.4th at 1378; *Nordby*, No. 21-2280, slip op. at 4. Moreover, after *Adams* was decided, Mr. Feliciano could have, but did not, file for a petition for review by the Board. Under 5 C.F.R. § 1201.115(d), the Board has discretion to reopen the record when a petitioner demonstrates that "[n]ew and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record was closed." If Mr. Feliciano wished to present new evidence, he needed to file a petition for review by the full Board. But he did not avail himself of that option.

Mr. Feliciano offers no legal support for his assertion that it was "arbitrary, abuse of discretion, and subject to reversal" for the Board to issue the decision after "the evidentiary standard regarding the nature of his orders changed dramatically."[1] Pet. Br. 28. Once we decided *Adams*, the Board was bound by our interpretation of 5 U.S.C. § 5538(a), and the Board properly applied *Adams* in rendering its decision.

## V

Because Mr. Feliciano's service does not qualify as an active duty contingency operation, as required by 5 U.S.C.

---

[1]    Mr. Feliciano also argues that the delay violated the MSPB's own statutory guideline, 5 C.F.R. § 9701.706(k)(7), which states that "[a]n initial decision must be made no later than 90 days after the date on which the appeal is filed." However, this regulation applies to the appeals by the Department of Homeland Security employees, not by Department of Transportation employees. *See* 5 C.F.R. §§ 9701.706(a); 9701.103. And in any event, § 9701.706(l) notes that the failure of the MSPB to meet these deadlines will not prejudice either party or form the basis for any legal action.

§ 5538(a), the Board properly denied differential pay. We affirm the decision of the Board.

## AFFIRMED

Costs

No costs